## Illinois Central Railroad Company and Lake Erie and Western Railway Company v. Jesse R. McCollum.

1. PEREMPTORY INSTRUCTION—*how motion for, to be considered.* In ruling upon a motion for a peremptory instruction, the trial judge is bound to take the evidence most favorable to the plaintiff as true and to ignore all opposing testimony.

2. RES IPSA LOQUITUR—*when rule of, applies.* Where an injury results from a collision, the doctrine of *res ipsa loquitur* applies notwithstanding there was no contractual relation between the plaintiff and the defendant.

3. EXPERT TESTIMONY—*when incompetent.* It is for the jury to say whether an injury was caused by the accident in question; it is only competent for medical experts to testify that the injury in question *might* have resulted from such accident.

Action on the case for personal injuries. Appeal from the Circuit Court of McLean County; the Hon. COLOSTIN D. MYERS, Judge, presiding. Heard in this court at the May term, 1905. Reversed and remanded. Opinion filed October 9, 1905.

CHARLES L. CAPEN, for appellants; JOHN G. DRENNAN, of counsel.

WELTY, STERLING & WHITMORE, for appellee.

MR. PRESIDING JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an action in case, by which appellee seeks to recover damages for personal injuries alleged to have been received by him in a collision which occurred at the crossing of the railroads of the appellant companies. A judgment for $10,000 was rendered against defendants, to reverse which this appeal is prosecuted by both. The declaration consists of three counts, the first and third of which aver, in substance, that on August 20, 1903, the two defendants were railroad companies, operating railroads that crossed one another on a level near the southeastern part of Bloomington; that plaintiff was a passenger on the train on the Lake Erie & Western Railway to be carried from Saybrook to Bloomington; that it was the duty of both defendants not to permit their engines, cars or trains to pass the crossing without first positively ascertaining if the way was clear; that at the junction of the two railroads, the Illinois Central Railroad Company negligently and carelessly caused and permitted one of its freight cars to pass said crossing without first positively ascertaining if the way was clear and safe for said car to pass, whereby the trains collided, which collision was caused

by the neglect of the defendants, whereby plaintiff was violently thrown down and against portions of said car, and severely injured, etc.

The second count charges that the Illinois Central Railroad Company negligently permitted one of its freight trains to proceed to pass over said crossing without first having ascertained that said crossing was free from impending danger of the cars and trains of the said Lake Erie & Western Railway Company, and that the said Lake Erie & Western Railway Company negligently caused its train, on which plaintiff was a passenger, to proceed to pass over said crossing, at the same time neglecting to ascertain whether said crossing was free from impending danger of the cars of the said Illinois Central Railroad Company. In all other respects the counts are substantially alike. To the declaration both defendants pleaded the general issue.

The facts as shown by the evidence, are, in brief, as follows: The defendant Lake Erie & Western Railway Company's track at the place of the accident, runs nearly east and west; parallel thereto, and a few feet south, is the track of the Big Four Railroad Company. The track of the Illinois Central Railroad Company runs north and south and crosses the other two railroads on a level. Commencing about 375 feet north of the crossing, and extending in a southeasterly direction, is a " Y " to the Lake Erie & Western Company's track, and then across to the Big Four track. The " Y " was used for the purpose of storage of freight cars and the delivery of the same from one railroad to the other. On the day of the accident a switching crew of the Illinois Central Railroad Company, with the aid of a switch engine, running backward, attempted to switch a car loaded with hogs, from the main track of the Lake Erie & Western Railway Company onto the "Y" north of the Lake Erie & Western main track. When several car lengths north of the junction of the main track and the " Y," the engineer slowed up the engine, which was running at the rate of eight or nine miles, to about four miles an hour. For some reason, not appearing in

evidence, the coupling on the engine opened, releasing the car, which, despite the efforts of the brakeman, stationed thereon to check it, ran on and over the "Y" down to the main track of the Lake Erie & Western and into the last coach of a passing Lake Erie & Western train, which was running at the rate of about eight miles an hour. The force of the collision tore the coach from its front truck and overturned it on its side.

Appellee, who was a passenger riding in said coach, was badly bruised about the forehead, eyes, left shoulder and leg, and claims, as the result of the collision, to have ever since suffered from paresis or partial paralysis of the bowels and traumatic neurasthenia resulting from injuries to the nerve centers which supply his intestines with nerve force; that from the time of the accident he has, by reason thereof, suffered from gradually increasing constipation, insomnia, pains in the head, nervousness, loss of appetite and weakness, until he is now a physical wreck.

At the close of plaintiff's evidence, and again at the close of all the evidence, appellants moved the court to give an instruction directing the jury to find the defendants, and each of them, not guilty, both of which motions were overruled. The effect of such motions was to raise the question whether there was evidence in the record which, together with all inferences which might reasonably be drawn therefrom, fairly tended to establish the plaintiff's case.

We are of opinion that the evidence tends to establish the negligence charged against the Illinois Central Railroad Company. The inability of the brakeman to control and stop the car before reaching the main track is conceded. The fair, if not the only, inference to be drawn therefrom, is that the coupling apparatus was either insufficient for the purpose intended or was out of repair, or that the witnesses who testified that the car was properly coupled to the engine were mistaken or testified falsely. Otherwise such failure could only be attributable to supernatural causes. No stronger or more con-

vincing proof of *prima facie* negligence could be offered than the fact that the coupling utterly failed to perform the very service it was designed to accomplish. In ruling upon the motions in question, the trial judge was bound to take the evidence most favorable to the plaintiff, as true, and to ignore all opposing testimony. McGregor v. Reid, 178 Ill. 471; Martin v. R. Co. 194 Ill. 148. The proof offered by appellants tending to show that the coupling device was, after the collision, found to be in perfect working order and without defect, could not, therefore, have been properly considered by the court in passing upon the motions. If, however, it be conceded that the coupling was in perfect condition, and that the car was properly coupled, such facts but tend to show that the particular device or appliance in use upon the car in question must have been defective in its original design or construction, in which case notice to the company of such fact would not be required.

Moreover, we think the doctrine of *res ipsa loquitur* is applicable as against the Illinois Central Railroad Company. It is manifest from the uncontroverted facts surrounding the occurrence, that the collision would not have happened had it not been for the failure of the train crew, who had the exclusive management of the train, to control the car which caused the accident; and further, that the accident was one that would not ordinarily have occurred had such crew been in the exercise of due care. Negligence on the part of the Illinois Central Railroad Company is therefore properly presumed, and it justly follows that the burden of proof, to the extent of rebutting such presumption, was cast upon it. The contention of appellants that the doctrine does not apply unless a contractual relation exists between the parties is, we think, contrary to the greater weight of authority. N. C. St. Ry. Co. v. Cotton, 140 Ill. 486; C. C. Ry. Co. v. Carroll, 206 Ill. 318; Griffen v. Manice, 166 N. Y. 188.

The second count of the declaration charges that the Lake Erie & Western Railway Company was negligent in

that it caused its train to pass over the crossing without first ascertaining whether the same was free of impending danger from the cars of the Illinois Central Railroad Company. There is evidence fairly tending to show that the engineer of the passenger train failed to see the wild car until he was within ten feet of the crossing, at which time it was about fifty feet from the main track; that if he had looked in that direction he could have seen the wild car coming in sufficient time to have stopped his train before it reached the crossing and thus have avoided the collision. When this evidence is taken as true, and all other conflicting therewith disregarded, it may be reasonably inferred therefrom that the proximate cause of the collision was the combined negligence of both appellants, for which either or both were responsible. The court, therefore, properly refused to direct a verdict for either of the defendants.

It is further urged that the court erred in its rulings as to the medical expert testimony. In view of the fact that appellee suffered no serious mutilation of his body nor loss of its members, and that the most serious consequences claimed to have resulted from his injuries were of such character as are not necessarily or ordinarily evidenced by the external appearance of the patient, the size of the verdict rendered clearly indicates that the jury found that he was suffering from that most subtle and easily simulated ailment known as "traumatic neurasthenia;" in other words, an impairment of the nervous system by nervous shock. It is manifest that in determining whether an ailment of this character is simulated, exaggerated, or, in fact, exists, or its extent, duration and effect, a jury must rely almost entirely upon the testimony of those learned in the science of surgery and medicine, who, in turn, in their diagnoses, are guided to a great extent by a subjective, rather than objective, examination of a patient.

While the health of appellee, at the time of the trial, appears from his own testimony, to have been impaired to the extent claimed by him, the further essential fact that the proximate cause of such condition was the injuries received

by him at the time of the collision, was and could only have been shown by the testimony of the medical or surgical experts, whose testimony appeared in the form of answers to questions of a hypothetical character. Upon this, and further questions as to the nature, cause and extent of appellee's injuries, and his then present state of health, six physicians were called by appellee, and two by appellants. The testimony offered by appellee tended to show that the amount of the verdict rendered was fully warranted, while that offered by appellants tended to show that his condition was the result of other causes than such injuries. That only such hypothetical questions as were competent and proper should have been propounded to said witnesses, and the possible prejudicial effect of a departure from the well-established rule governing the admissibility of so-called expert testimony, is so apparent as not to require discussion.

Dr. Cantrell, called by appellee, testified that he attended appellee upon the day of the accident and for some thirty days thereafter. After the witness had detailed appellee's condition from day to day, the treatment and remedies prescribed and administered, and the non-effect thereof, he was asked the following question: "Assuming on the day you first treated him, on the day that he came to your office a year ago last August, he was on his road to Bloomington on a passenger train on the L. E. & W.; and at the Illinois Central at the 'Y' the front train run into his car, upsetting it and throwing him on the other side of the car, and after the collision he got up and went out, and then these bruises on the shoulder and the hip and on the forehead, and this bruise across the body you have described— assuming these things to be true, what would you say was the cause of his present condition as you find it?" Over the·objection of appellants the witness answered: "I think it was caused by the injury received in the wreck." Dr. Fox, also called by appellee, testified that he examined appellee several days previous to the trial. He then described appellee's condition at that time, and stated further

that he had heard the testimony of Doctors Cantrell and Chapin, who had theretofore testified in behalf of appellee. He was then asked a hypothetical question, consisting of about 700 words, based upon the testimony of said physicians, and upon a supposed state of facts assumed as appearing in evidence, in answer to which he stated that in his opinion appellee had "traumatic neurasthenia." He was then asked the following question: "What in your opinion is the cause of that condition, remembering all the assumptions put in my former question with reference to this wreck?" Over the objection of counsel for appellants the witness was permitted to answer that in his opinion it resulted from "an injury which he might have received from the fall, and the nervous shock of knowing the collision was coming or going to happen or knowing he was in great danger at the time." Dr. Mammen, also called by appellee, after testifying in substance to the same effect as Dr. Fox, was asked: "What in your opinion is the cause of his condition, remembering the assumptions in my hypothetical question?" To which he replied, over objection, as follows: "The cause is, the injury to which he was subjected in the railway train." Substantially similar questions were propounded by appellee to Doctors Chapin and Bath, to which like answers were returned.

The questions referred to were so manifestly improper, and in this case so prejudicial to appellant, as to necessitate a reversal of the judgment. What the jury were entitled to know of the witnesses as experts, was whether or not, in their respective opinions, the shock from the collision might have caused appellee's condition. Whether it did produce it, or whether such condition was the result of other causes, were questions for the jury. The determination of the same was not within the province of any medical expert. While it was competent for the physicians, as experts, to testify that appellee's condition could have been caused by the accident, the testimony adduced by the questions under consideration was to the effect that it was so caused, which was a question of fact upon which the

expert witnesses were no more competent to testify than any other witness. I. C. R. R. Co. v. Smith, 208 Ill. 608. The fact that similar objectionable questions were propounded by appellants to their expert witnesses, did not materially lessen the prejudicial effect of such incompetent testimony.

By the first instruction given to the jury at the instance of appellee, they were told that if they believed from a preponderance of the evidence that the plaintiff, while a passenger and in the exercise of due care for his own safety, was injured by the negligence of the Illinois Central Railroad Company as alleged in plaintiff's declaration, then they should find such defendant guilty. Counsel for appellants insist that such instruction is erroneous, citing the case of Terra Cotta Lumber Co. v. Hanley, 214 Ill. 243, where a substantially similar instruction was condemned. In that case the evidence tended to show that the plaintiff assumed the risk of the defective scaffold which caused his injuries, and it was properly held that the effect of the instruction was to eliminate that question from the case, inasmuch as it was not averred in the declaration, either expressly or by implication, that plaintiff did not assume the risk. In the present case the declaration alleges due care on the part of the plaintiff, and negligence on the part of the defendants, which allegations appellants seek to negative. Under the facts in evidence, no question of assumed risk is or could be involved. It follows that giving the instruction under consideration was not reversible error. C. C. Ry. Co. v. Carroll, 206 Ill. 318; Brewing Co. v. Stoltenberg, 211 Ill. 531; Fraternal Army v. Evans, 215 Ill. 629.

The fifth instruction given at the request of appellee, which states the measure of damages to be awarded, is not subject to the objection interposed and argued at great length by appellants. A substantially similar instruction was approved by the Supreme Court in S. C. Ry. Co. v. Puntenney, 200 Ill. 9.

Numerous other errors are assigned and argued. Some of them are disposed of by what has been said. The

questions involved in others will. not arise upon another trial. We, therefore, shall not further extend this opinion by a discussion of the same. For the errors indicated the judgment must be reversed and the cause remanded.

*Reversed and remanded.*