## Chicago City Railway Company v. Joie E. Shreve.

### Gen. No. 12,704.

1. PASSENGER—*duty of carrier to.* A carrier owes to its passengers the duty of doing all that human care, vigilance and foresight can reasonably do under the circumstances, and the mode of conveyance used and the duty of the carrier in this respect is not discharged until the passenger has safely alighted from the car.

2. PASSENGER—*when carrier liable for injury to.* A carrier is liable to a passenger injured in a collision at a point of danger, where it has failed to take all measures necessary to guard against accidents of such a character.

3. MEDICAL EXPERT—*as to what not competent.* A medical expert, as distinguished from an attending physician, is not qualified to give evidence with respect to subjective symptoms.

4. INSTRUCTIONS—*how to be construed.* All of the instructions given are to be considered as a series and construed together.

5. VERDICT—*when not excessive.* A verdict for $2,500 is not excessive, where the evidence shows a partial paralysis resulting from the accident in question.

6. PHYSICAL EXAMINATION—*offer to permit, not improper to be made in jury's presence.* Held, that under the circumstances occurring at the trial of this case, it was not improper for plaintiff's counsel to offer to submit the plaintiff to a physical examination by physicians selected by the court.

7. WITNESS—*money paid to, in excess of statutory fees, may be shown.* It is proper in order to affect the credibility of a witness, to show that money in excess of the fees allowed by statute has been paid to him.

8. JUROR—*what does not show prejudice of.* The fact that a juror has asked questions of a witness and indicated a possible disbelief of the witness, does not show such a prejudice as to entitle the party calling such witness to withdraw a juror.

9. ARGUMENTS OF COUNSEL—*strong denunciation not necessarily improper.* The use of strong denunciatory language is not improper where it is sustained by that which the evidence tends to establish.

10. CONDUCT OF COUNSEL—*when cannot be complained of.* Conduct of counsel induced by the action of the counsel of the complaining party cannot be made the subject of just complaint.

11. JURY—*when manner of polling, not ground for reversal.* The manner of polling a jury is not ground for reversal when

the answer of each juror clearly showed that the verdict was, when signed, and was, likewise, at the time of polling, the verdict of such juror.

12. JURY—*when confinement of, for twenty hours, not ground for reversal.* In a case which was on hearing for ten days and in which the evidence was conflicting, a confinement of the jury for twenty hours does not constitute an abuse of the power of the trial judge.

Action of trespass on the case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. ARTHUR H. CHETLAIN, Judge, presiding.   Heard in this court at the October term, 1905.   Affirmed.   Opinion filed October 8, 1906.

**Statement by the Court.**   This is an action of trespass on the case for personal injuries claimed to have been suffered by appellee through the negligence of appellant while a passenger on its cars in Chicago, August 19, 1901.

The declaration with customary particularity, avers the ownership and operation by appellant, on the day of the accident, of the street railway and the cars running thereon north and south of the point where the accident is alleged to have occurred on Clark street, Chicago, and that it was at that time a common carrier, and that appellee being in the exercise of ordinary care for her own safety, and while such passenger on said car, in the vicinity of Fourteenth street, appellant through its servants in charge of said car so recklessly and improperly ran, managed and operated said car that, as a result and in consequence thereof, said car, thereby then and there ran into and collided with a certain wagon then upon said railway track, whereby appellee was thrown violently against the car and her left arm and shoulder were seriously and permanently injured externally and internally and divers bones of her body sprained, dislocated and broken, and that she sustained serious and permanent injury to her spine and nervous system, and as a result of such injuries she became partially paralyzed,

crippled, sick, etc., and from thence hitherto has suffered pain, been hindered and prevented from transacting her usual business and affairs and necessarily expended money in an endeavor to be cured of such injuries so contracted, and laying her damages at $15,000.

An additional count by leave of court was filed January 13, 1903, in which the averments of the original count are substantially set forth, with the additional averment in the nature of a claim for special damage that at the time of the injury appellee was proprietress of and conducting a dressmaking establishment from which she derived a profit of twenty dollars per week.

A second additional count was, by like leave, filed January 28, 1903, in which the place of the accident and its environment is more specifically and minutely described and set forth. Among others is the following averment: "That there was between Thirteenth and Fourteenth streets a certain high wall running parallel with and but a few feet west of said southbound track, and that there was a certain opening in said wall which connected with a certain planked roadway leading from said Clark street through said opening westward to a certain freight or dock house, and that long prior to and at the time and place in question said opening and roadway were used by teams and wagons in going from Clark street to or near said freight or dock house and from and near said freight or dock house to Clark street, and in each case they were required to cross defendant's south-bound track and that by reason of the height of said wall and of the proximity of defendant's south-bound track thereto, its servants in charge of its south-bound cars were unable to discover teams or wagons being driven eastward along said roadway toward and through said opening into Clark street until such teams and wagons were almost upon the track upon which said south-

bound cars were running, which made said crossing a dangerous place, where collisions between defendant's south-bound cars have and were likely to occur,'' etc.; which condition, it is contended, was or ought to have been known to appellant by the exercise of due care, and that thereby the law imposed a duty upon appellant either to maintain a flagman or install some mechanical device, by means of which notice to those operating south-bound cars might be given of the approach of teams and wagons driving eastward toward said opening in time to avoid collisions, etc.; averring appellant's neglect either to maintain a flagman or any device at said point to avert the risks of collisions thus apparent. That on the occasion in question and in consequence of the absence of such necessary precautions and the negligence thus imputable to appellant, the servants of appellant in charge of said car did not learn of the approach of the colliding team and truck in time to avoid the impact which followed, resulting in the injuries to appellee for which she seeks compensation in this action.

The general issue was interposed to the declaration as thus constituted. Three times the case has been on trial before court and jury, twice the jury disagreed, the third time appellant was found guilty and a verdict rendered assessing appellee's damages at the sum of $2,500. After overruling a motion for a new trial and denying a motion in arrest of judgment, made by appellant, the trial court entered a judgment upon the verdict, in an attempt to reverse which this appeal is prosecuted and forty-three assignments of error appear upon the record.

WILLIAM J. HYNES, JAMES W. DUNCAN and C. LEROY BROWN, for appellant; MASON B. STARRING, of counsel.

JAMES C. McSHANE, for appellee.

MR. JUSTICE HOLDOM delivered the opinion of the court.

We deem it unnecessary, as serving no good purpose, to review all the numerous assignments of error alleged upon this record, and in this opinion will confine the exposition of our views within the lines of law and fact which must control our decision.

Appellee being a passenger upon the car of appellant, it owed her the duty under the law to do all that human care, vigilance and foresight could reasonably do under the circumstances and the mode of conveyance in use to carry her in safety, and its duty in this regard was not discharged until she had safely alighted from the car, providing always that she was in the exercise of ordinary care for her own safety and that no negligent act of hers contributed proximately to the injury complained of. Frink v. Potter, 17 Ill. 406; Chicago City Ry. Co. v. Morse, 98 Ill. App. 662, affirmed in 197 Ill. 327; Kane v. Cicero & Proviso Elec. Ry. Co., 100 Ill. App. 181.

This was the measure of appellant's duty. Was it negligently regardless of any act encompassed within such duty, which constituted the proximate cause of the accident in which appellee claims to have been injured? In order to determine the duty of appellant, the conditions environing the place of the accident at, and prior to the time of its happening, must be examined. It is charged in the declaration and demonstrated by the proofs unchallenged, that appellant for many years prior to August 19, 1901, the day of the accident, had controlled and operated an electric line of street cars running north and south on Clark street in Chicago; that the west rail of its south-bound track between Thirteenth and Fourteenth streets was within two or three feet of a high brick wall which separated Clark street from the tracks of the Lake Shore & Michigan Southern and other railroads; that to the west of these tracks was an arm of the Chicago river used

as docks for water craft engaged in navigating the Great Lakes, where cargoes were landed, and that in this separating wall was a break or opening at the point of the accident, the road leading through this break to and from the docks to the west being planked. There was a sliding gate at the opening, which appellant contends was closed and across which was a sign to the effect that the entrance was for "Fire Engines only;" but appellee contends that on the contrary the gate was seldom closed and across it there was no notice.  Through this opening teams and wagons were constantly driven, carrying loads to and from the vessels docked at the west of the railroad tracks.

The motorman in charge of the car admittedly passed and repassed this point, motoring a car, daily for several years prior to the occurrence in dispute. If this opening in the wall was constantly used as the entrance of a roadway to the docks to the west of the railroad tracks by teams and wagons there, from the fact that the tracks used by the south-bound cars were so close to this wall and opening, that it was impossible for a motorman to discern any vehicular traffic emerging from such opening in the wall, until the horses' heads were exposed to view by passing through that opening, it is plainly evident that it was a highly dangerous place, exposed, unprotected and unguarded to accidents happening by cars coming into collision with vehicles passing out of such opening and crossing appellant's tracks on their way from the docks to the highway in Clark street, and this condition, if it existed as claimed, cast upon appellant in the exercise of ordinary care in the operation of its south-bound cars, the duty of using some practicable measure to guard against the dangers thus apparent and of the existence of which it had actual or constructive notice. On the other hand, if the opening was closed with a sliding gate, which was kept closed, and had a warning notice restricting its use for the passage of "Fire

Engines only,'' and the opening and roadway west of it was not in general use for vehicular traffic, then the duty of appellant would be restricted in accordance with the apparent necessities of the condition thus presented.

The evidence in the record, credible and unchallenged, justified the jury in concluding that the contentions of appellee were established, that the road from the opening west was planked, that the vessels at the dock were reached by teams and wagons as testified by several teamsters who constantly drove their loaded vehicles through that opening, some day by day, and while so doing saw others likewise engaged. Such had been the errand of the colliding wagon at the time of the accident in controversy, the driver of which had many times before made the same journey with like equipment. The testimony of the motorman that he never saw a team with a wagon driven through that opening, is lame and impotent in the light of the affirmative testimony of eye-witnesses and participants to the contrary. The evidence of appellant's witness, the yardmaster of the Lake Shore & Michigan Southern Railroad, instead of contradicting, tends to support appellee's witnesses on this point, for while it is true he testified he did not see any regular teaming there, yet he admits he had seen grocery wagons driven in over the road through the opening, delivering goods to boats at the docks, and that he knew other vehicles than ''fire engines'' passed through that opening in the wall.

The ignorance of the motorman though long continued, as to the dangers apparent and surrounding the place of collision, cannot relieve appellant from its duty to protect the point of danger in the operation of its cars or free it from its responsibility to answer in damages for injuries occasioned by its neglect of this duty; neither can liability be avoided under the claim that appellant could not practically operate

its cars if the speed of its cars were slackened at this point, for if the force of this contention were conceded, it does not follow that it would be necessary for the speed of every car to be slackened,-but only such cars as were approaching in the alignment of the opening at the time when traffic was seeking to cross the tracks of appellant. A watchman or some mechanical device could be provided to give notice in time to ward off danger. The contention is impotent as an excuse, for the law regards life and limb more highly than mere cost of operation, and besides, there is nothing in this record from which this court can say that protecting this point from the dangers there apparently imminent, could not be done with due regard to the practical operation of appellant's cars.

We are satisfied from the evidence that the point of collision between the car of appellant and the wagon coming out of the opening in that wall was a point of danger, notice of which is chargeable to appellant, and consequently the duty rested upon appellant to take all measures necessary to guard that point against accidents from collision. Appellant was derelict in failing to take any precaution whatever to prevent collisions of its south-bound cars at this point with teams and wagons emerging through the opening in the wall, and such dereliction was negligence.

We hold that the averments of the declaration are sufficient to impute negligence to appellant in not protecting the place of the occurrence of the accident in question from the apparent danger of collisions to which, unprotected, it was exposed. Jennings v. Chicago City Ry., 157 Ill. 274; Chicago & Grand Trunk Ry. v. Carroll, 189 Ill. 273; West Chicago Street Ry. v. Petters, 196 Ill. 298.

While there is much room for doubt as to the extent of appellee's injuries, there is no question but that she was a passenger upon the car at the time of the accident or that she was injured somewhat at that time,

although it is admitted that the serious consequences of her injuries did not fully develop until sometime later. Appellee's version of her injuries and their ultimate consequences upon her physical health and system, is corroborated by lay witnesses, nurses, medical men who attended her and others who testified hypothetically. From such evidence and from other facts and circumstances appearing from the testimony, the jury were warranted in believing the claims of appellee as to the extent of her injuries. The evidence of all the witnesses who testified as to the speed at which the car was being propelled at the time of the impact, is indisputably to the effect that it was going at the usual rate of speed and as fast as at any time during its progress from its northern point of starting upon its southern trip. The evidential facts demonstrate that the car struck the wagon with great force, knocking it against the south end of the opening in the wall; that the wagon was jambed by the car against the wall and was broken; that the wrecking wagon and crew of appellant were called to extricate the wagon and car from this position; that two men in the wagon were thrown off and somewhat injured; that a man on the car was knocked down, some glass and an upright in the car were broken, and other damages were testified to as having been done to the car as the result of its impact with the wagon. So that from all these evidential facts in a collision attended with these results, the jury may, without having done any violence to the probabilities, have honestly believed appellee's statement and that of her witnesses and medical men as to the extent and nature of her injuries, and in our judgment the verdict finds sufficient support in the proof on this branch of the case.

Complaint is made that Dr. Moyer was permitted to testify as to the subjective symptoms about which appellee informed him and which he gathered from making certain tests, such as holding her arm rigidly

at her side, pricking pins into many parts of her body, subjecting her shoulders to various motions, etc., the effect of which upon appellee he had no knowledge other than as appellee informed him. Upon all this Dr. Moyer diagnosed her case as "hysteria." On motion of counsel for appellant, when on cross-examination of Dr. Moyer his diagnosis was disclosed as having been made from these subjective symptoms, the whole of such testimony was stricken out. This operated as a sufficient corrective. Dr. Moyer examined appellee for the sole purpose of qualifying as a witness upon the trial. He was not an attending physician, but an expert witness and was disqualified from giving in evidence anything about which appellee told him as to symptoms which were subjective. Lake St. El. v. Shaw, 203 Ill. 39; W. C. Street Ry. v. Carr, 170 Ill. 478. Dr. Moyer made two examinations of appellee, and on testifying to that fact, and that his second diagnosis was based upon his first examination as well as his second, on motion of counsel for appellant to strike such testimony from the record, the court said: "The same testimony that I have ruled on with reference to the examination in question should apply to the other examinations referred to by the doctor in his testimony. The evidence of conclusions or opinions of professional experts based upon subjective symptoms, conditions or manifestations are improper and should be excluded from the record."

It is asserted, by this ruling the court evaded its duty to pass directly upon the objection and left it to the jury to judge as to what part of the doctor's evidence should or should not remain in the record. While the ruling was not in the stereotyped form, yet we are unable to see how appellant could have been injured by the ruling of the court in the form in which it was couched. We will assume that the jury was an ordinarily intelligent one, which does no violence to the presumptions of the law, and the jurors were, after

a careful examination by appellant's counsel, accepted unchallenged to try the case. They, being reasonably intelligent men, could not mistake the meaning of the court's ruling in the words used. The court illuminated the whole question involved and thoroughly covered it by the clear statement of his ruling. It was most understandingly favorable to appellant, and to heed the objection now made as well taken would tend to encourage carping technical criticism. The court was guiltless of error in this ruling. We do not regard the objection to the hypothetical question propounded to appellee's medical expert witnesses as impinging the rule, or as being contrary to the doctrine on this subject as laid down in Chicago City Ry. Co. v. Smith, 69 Ill. App. '69.

Appellant insists that at the close of appellee's evidence the court should have instructed the jury peremptorily to find a verdict for appellant, based upon the claim that appellant could not be held liable for not maintaining a flagman at the place of the accident or some mechanical appliance or device to give warning of approaching teams and wagons. From what has been heretofore said it will be seen that the duty of appellant in this regard depended upon environing conditions and is a question of fact and not one of law. It was for the jury to say, as a question of fact, whether dangerous environing conditions were pellant, we find on examination and comparison to be had neglected to perform. The refusal to give this instruction, therefore, was not error.

Appellee's second instruction complained of by appellant we find on examination and comparison to be in accord with the ruling in Chicago & Alton Ry. Co. v. Byrum, 153 Ill. 131, and to state correctly the extent of the liability of appellant with the limitation, in effect, consistently with the practical operation of the road. While these words were not categorically used, they appeared in other instructions given at the

request of appellant. Under well-settled principles the instructions of the court must be read and treated as a whole, and if all the instructions given, taken together, not separately, state clearly the law of the case, then such instructions serve every legal requirement. The instruction here complained of reads "that it is the duty of a common carrier" —which appellant is—"to do all that human care, vigilance and foresight can reasonably do under the circumstances in view of the character and mode of conveyance adopted reasonably to guard against accidents," etc., and the point argued is, the omission of the words "consistently with the practical operation of the road." Suffice it to say that in appellant's instruction 22 the jury are told that appellant was only required to exercise "the highest degree of care reasonably consistent with the practical operation of the railway," and by appellant's instruction 23 also told that "the carrier is not required to exercise a degree of care which is not reasonable and practical in the operation of its business." Montgomery Coal Co. v. Barringer, 218 Ill. 327; W. C. St. Ry. v. Schulz, 217 Ill. 322. The jury by these instructions had prominently before them the limitation of appellant's liability, and the criticism and objection are without merit.

An instruction in the language of appellee's second instruction was approved in Chicago City Ry. Co. v. Shaw, 220 Ill. 532, which was an affirmance of the judgment of this court in that case, and is therefore conclusive here.

After a thorough consideration of the other instructions, the giving of which is assigned for error, we are unable to find in them any misdirection as to the law applicable to the facts deducible from the evidence. The jury were not only fairly instructed upon the law of the case, but favorably to appellant.

The verdict of $2,500, it is insisted, is excessive compensation for the injuries resulting to appellee from

the occurrence in question. As before said, the testimony as to appellee's injuries is conflicting. But appellee's testimony, supported as it is by other credible evidence, is to the effect, that her physical condition, proximately attributable to the accident, is seriously impaired, that she has partial paralysis of the left side and that her left arm is useless, which ailments are permanent and incurable. The testimony of the doctors and attendants at the hospitals eleven months after the accident, when she underwent an operation for appendicitis, is of a negative and not a positive character. It is founded on the absence of complaint upon her part. No examination of appellee's body was made by the operating or attending physicians for any troubles other than the appendicitis from which she was then suffering and for which she underwent a surgical operation; neither was she interrogated or inquired of in relation to any other physical ailments. It was for the jury to reconcile the conflict in the evidence. They have done so in favor of appellee. We find ample credible evidence in the record justifying the verdict reached and fully supporting it. The amount awarded is neither large nor excessive as compensation for the impaired physical condition of appellee. which she attributes to the accident resulting from the negligence of appellant. It is unlike Lake Street El. Co. v. Johnson, 70 Ill. App. 413, where the plaintiff suffered shock of a temporary nature, had a sprained wrist with some discolorations of the flesh and pain resulting from these specified injuries, but no permanent or incurable injuries which the court held were attributable to the accident.

Counsel for appellant in apparent sincerity and with much force and iteration of incidents attending the trial, with liberal quotations from remarks of counsel and the trial judge, and questions asked by juryman Harris of appellant's witness Kreusler, together with the several rulings of the court to which they de-

vote thirty-three pages of their brief, charge misconduct in the trial of the case involving counsel of appellee, the trial judge and the jury alike in the sweeping inclusiveness of the criticism, covering the whole course of the trial from its inception to its finality.

The situation thus presented is grave and of the utmost moment, attacking, as it does, the very fountain source of justice and impinging the motives and actions of all concerned in its administration in the trial court. Such charges are not to be dealt with summarily, nor treated lightly, but command our careful scrutiny and judgment. We have carefully considered all that has been urged as "misconduct of the trial," and we find the first clash between counsel was provoked by the statement of counsel for appellant in his opening remarks to the jury outlining the defense, that appellee's case was *"a fake, pure and simple, and that the accident was seized on as a pretext for building up a claim which had no foundation in fact."* In an endeavor, we may assume, to offset the effect upon the jury of prejudice which such a strong statement was calculated to make upon their minds, counsel for appellee offered to submit his client to a physical examination by any medical man, whom the court might select. A wordy combat on this proposition took place between the opposing counsel, in which both counsel were equally insistent. We think appellee's counsel in making the offer to submit his client to medical examination, as he did, was clearly within his legal rights, and that as a legitimate tactful move, it was made necessary by the broad and sweeping denunciatory charge of appellant's counsel that appellee's claimed injuries were a fake, etc. The ruling of the court in deciding this controversy was in accord with legal precedent and custom. Commonwealth Electric Co. v. Rose, 214 Ill. 545.

The record bears indubitable evidence that most of the fierce forensic combats which occurred between

counsel, were in their inception provoked by counsel for appellant and unduly prolonged by his continued insistence and refusal to submit to the rulings of the court. Even the mannerisms, their character not very plainly disclosed by the record, of counsel for appellee were fruitful of objection, but wherein they were otherwise than natural and permissible, we are unable to discern from the record. Counsel of eminence and ability have habitually been noted for individual peculiarities and mannerisms in their conduct of causes before courts, but where they are not subversive of the proprieties of the court room or violative of the rules of law or practice, or do not manifestly tend unduly to prejudice the fairness of the trial, the sanction of the law has been accorded them.

Appellant paid several witnesses for their loss of time, while necessarily attending upon the trial, in excess of statutory witness fees. The amount of such payments and the earning ability of such witnesses were proper subjects of inquiry upon cross-examination and of comment in the closing address to the jury. It was an element by which to aid the jury in gauging the weight to be accorded the testimony of such witnesses in view of that and the other facts developed upon the trial. The witness Kreusler testified that he had received $28 for his witness fees from appellant and that as a cabinet maker he earned 50 cents an hour and that he had served an apprenticeship of about one year. Juror Harris asked this witness questions in relation to his apprenticeship, and did by such questions evidence some doubt of the witness earning so much on such a short time of apprenticeship. The court however ruled against the materiality of the juror's questions. Whereupon counsel for appellant moved the court—on the claim that the juror Harris in asking these questions had demonstrated such prejudice against appellant as disqualified him further to act in the case as a juror—to withdraw a juror and con-

tinue the cause. The case had then been on trial five days, and the court refused to grant the motion and the trial proceeded. This incident standing alone did not warrant the court's granting the motion or concluding therefrom that the juror's mind was prejudiced or his judgment so warped as to render him unfit to further sit in judgment upon the case. Neither the court nor counsel could then read the mind of the juror on the case as a whole. Whatever misgivings the juror may have shown by the form of his questions on this one point, he may, for aught that appears to the contrary, have been the fairest minded juror of the panel. His remark that he worked for the same company as the witness, though uncalled for, did not necessarily tend to show prejudice unfavorable to the witness or appellant or indicate any hostility. Neither was there anything radically reprehensible from a legal standpoint in the question of the juror Hyslop directly drawn from him by appellant's counsel as to whether or not there was a fender on the car. It was not important to a decision of the case on the evidential facts as a whole, as to whether or not there was a fender on the car, and the court properly overruled both motions of appellant to withdraw a juror and continue the cause.

We do not regard any of the remarks of counsel for appellee in his argument to the jury as overstepping the bounds of propriety or as warranting adverse criticism, when viewed from the standpoint of the facts in evidence concerning which the remarks were made. Counsel was fully justified in drawing such conclusions as he did from the testimony, as long as he did not misquote the witnesses, and we do not find that he was guilty of so doing.

Courts have said that fierce and just invective, when based upon the facts and all legitimate inferences to be drawn from such facts, are not discountenanced. Counsel may rightfully arraign both the conduct of

the parties and impugn, justify or condemn motives, assail the credibility of the witnesses or challenge the incoherency or inconsistency of their testimony, when justified by the record.

We are unable to say that this conduct of counsel for appellee, complained of by appellant, was any more reprehensible than that of counsel for appellant, and, as we have before said, the action and remarks criticised were in the main provoked by opposing counsel. For this reason, if for no other, such remarks being adjudged to be within the reasonable bounds of propriety, the objection is unavailing. Peyton v. Village of Morgan Park, 172 Ill. 102.

The impropriety or not of the remarks of counsel rests largely within the discretion and control of the trial judge, and we do not find that such discretion was abused in this trial. Gallagher v. The People, 211 Ill. 158.

There is no force to the complaint made to the manner of the polling of the jury. The answer of each juror clearly showed that the verdict was, when signed, and at the time of the polling, the verdict of each juror. All legal requirements in this regard were substantially and understandingly fulfilled.

Lastly it is insisted that the court committed reversible error in keeping the jury confined twenty hours before they finally reached a verdict. There is no rule of law governing the time the court may detain a jury to consider of their verdict. It is a matter resting solely in the sound discretion of the court. This was the third trial of the case. No result had been obtained by the other two trials. It was important that an agreement should be reached, if within the bounds of reasonable possibility. The fruit of every litigated cause rests in the result. Mistrials should be avoided where feasible. The trial lasted through ten days, making eight court days actually devoted to the trial. The evidence was conflicting.

The progress of the trial bristled with forensic strife and resistance. The instructions upon the law of the case were somewhat voluminous. In view of these conditions, and the well-settled law governing the subject, we cannot say twenty hours was an unreasonable time for the deliberations of the jury, and measured by the result—which is a potent factor to be considered—the court did not abuse the sound discretion vested in it in so detaining the jury. Every juror evidenced his concurrence in the verdict, when polled at the request of appellant's counsel, immediately upon its rendition.

We find, after a painstaking consideration of this record, that the judgment is sustained by the pleadings and the evidence, that the jury were correctly instructed upon the law of the case, and that there is no error in the record justifying a reversal of the judgment of the Superior Court, and it is therefore affirmed.

*Affirmed.*