## Chicago City Railway Company v. Lillian Greinke.

### Gen. No. 13,373.

1. RES IPSA LOQUITUR—*when doctrine of, applies.* A presumption of negligence arises where a passenger is injured as the result of a collision between the car upon which she is riding and another of the cars of the same carrier.

2. MEDICAL EXPERT—*what may testify to.* A medical expert, not an attending physician of the plaintiff, may testify to tests made, not for purposes of treatment, but in order to qualify and give his evidence as an expert.

3. HYPOTHETICAL QUESTION—*when properly framed.* A hypothetical question is properly framed which concludes as follows: "Assuming all these matters to be true, can you, as a physician and surgeon, form an opinion as to what caused her condition?"

4. VERDICT—*when not disturbed as against the evidence.* A verdict will not be disturbed on review as against the evidence unless manifestly against the weight thereof.

Action in case for personal injuries. Appeal from the Superior Court of Cook County; the Hon. JAMES A. CREIGHTON, Judge, presiding. Heard in this court at the October term, 1906. Affirmed. Opinion filed October 3, 1907.

WILLIAM J. HYNES AND C. LE ROY BROWN, for appellant; MASON B. STARRING, of counsel.

JAMES L. BYNUM, for appellee; KNIGHT & HOYNE AND OLIVER R. BARRETT, of counsel.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

This is an appeal from a judgment of $5,000 rendered for personal injuries.

The declaration consists of one count, which, after the usual inducement part and charging that the plaintiff was a passenger on the car of the defendant at the time of receiving the injuries to recover damages for which the suit was brought, averred: "That it then and there became and was the duty of the said plaintiff to have used the highest degree of care to safely carry the plaintiff so being a passen-

ger as aforesaid in and on said car aforesaid, along, upon and over the route traveled by the same. Yet the defendant did not regard its duty in that behalf and did not use due and proper care that the plaintiff should be safely carried in and on said car aforesaid, but neglected so to do and by reason thereof afterwards and while the plaintiff was a passenger on said car aforesaid and in the exercise of all due care and caution for her own safety at or near a certain point in said city, county and State, to-wit, at the intersection of Clark street and Fifteenth street, the said car aforesaid collided with a certain other car of the said defendant, by means and in consequence whereof the plaintiff was thrown with great force and violence upon and against a certain seat of said Halsted street car and by means whereof the plaintiff's back and head were severely hurt, bruised, wounded and injured."

To this declaration defendant pleaded not guilty.

While thirty-seven distinct errors are assigned upon the record, only the following are urged upon us in argument as calling for reversal of the judgment of the court below:

(1) That the declaration stated no cause of action; (2) errors in admission of statements, and the making of demonstrations by the medical witnesses of appellee; (3) errors (a) in the hypothetical examination of medical witnesses, and (b) of witnesses not examined hypothetically; and (4) that the impaired physical condition of plaintiff is not attributable to the accident.

We will discuss and decide the questions raised in the order above enumerated.

1. The declaration under the doctrine of *res ipsa loquitur* clearly states a cause of action. The application of this dictrine is well stated on principle, fact and law in Drake Standard Machine Works v. William Brossman, 135 Ill. App., 209, in an opinion of Mr. Justice Adams. The facts averred and proved and not denied by defendant are that plaintiff was a passenger on the car at the time it collided with another car ahead of it on the same track; that both cars were owned and operated by the defendant; that plaintiff was

injured as a result of that collision.   These facts supply all
the essential elements making the doctrine of *res ipsa loquitur*
applicable.   A case so stated is an averment within the
scope of the doctrine, and when the proof sustains the aver-
ment a case of negligence is made out by legal intendment
of that doctrine, and the burden imposed upon defendant
in such circumstances to rebut and overcome the negligence
so imputable to it.   As said by Mr. Justice Adams in case
*supra,* so we again say here:   "The evidence fairly tends
to prove the plaintiff's case as stated in his declaration."
The contention that the blowing out of a fuse cannot be an-
ticipated or guarded against in the exercise of due care, is
altogether beside the question affecting the liability here.
The liability rests on the negligence attributable to defend-
ant from the violent coming together of the two cars.   The
law imposes the duty upon a street car company to so man-
age, operate and control the running of its cars that there
will be no collisions between them.   It was inexcusable neg-
ligence in defendant to run its cars at such a speed and in
such close proximity to the car ahead of it as to come in
violent collision with that car when it was at a standstill
because of the blowing out of a fuse.   If the roadway and
track at the point of the collision were not in strict align-
ment, so that cars running ahead could not be seen from
those following behind except at a limited distance, making
collisions imminent unless the following car was under per-
fect control, in such condition the law imposed upon de-
fendant the duty of holding its car in such control that in
the event of the car ahead stopping for any reason, the move-
ment of the following car could be arrested and a colli-
sion, with resulting injury to passengers, avoided.   A
failure in this regard is negligence.   The fact that the cars
of the defendant came together in violent collision, and that
plaintiff was injured as a result thereof made a *prima facie*
case for plaintiff and imposed upon defendant the *onus* of
proving if it could, that the collision was an unavoidable
accident and was not the consequence of its negligence.   This
it did not do to the satisfaction of the jury or the trial judge.

Neither can we find that the burden thus imposed has been met so as to repel the negligence imputable to it.

In N. Chicago St. Ry. Co. v. Cotton, 140 Ill., 486, the plaintiff was injured by a collision between two of the defendant's cars in a tunnel under the Chicago river, he being a passenger on one of the cars, and the court say: "The general rule seems to be, that proof of an injury occurring as the proximate result of an act which, under ordinary circumstances, would not, if done with due care, have injured any one, is enough to make out a presumption of negligence; and this is held to be the rule where no special relation, like that of passenger and carrier, exists between the parties. There must be reasonable evidence of negligence. But when the thing is shown to be under the management of the defendant, or his servants, and the accident is such that in the ordinary course of things does not happen, if those who have the management use due care, it affords reasonable evidence, in the absence of explanation by the defendant, that the action arose from want of care."

In Hart v. Washington Park Club, 157 Ill., 9, the court approved the doctrine announced in the Cotton case *supra,* and we regard it as controlling here. See, also, N. Y., etc., R. R. Co. v. Blumenthal, 160 Ill., 40, affirming same case, 57 Ill. App., 538.

As said in the Cotton case *supra,* "Whether or not the defendant offered such explanation of the accident as to relieve itself from the charge of negligence, and whether or not the plaintiff exercised due care for his own safety, were questions of fact for the jury." As in the Cotton case, we see no reason to disagree with the jury in its finding of facts.

2. Defendant contends vigorously that the actions of the court below come within the inhibition of the rule announced by this court in Chicago City Ry. Co. v. Shreve, 128 Ill. App., 462, in which it was said that one not an attending physician, but testifying as an expert witness, was disqualified from giving in evidence anything told to him by the plaintiff as to symptoms which were subjective. Plaintiff at the time of the accident was fifteen years of age, and em-

ployed as a cash girl at "The Fair. " The evidence of plain-
tiff's witnesses shows that to the time of the accident she was
physically and mentally a normal, healthy child; that in the
collision between the cars she was so injured that since then
she has been an incurable invalid and suffers from spasms
and fits, the diagnosis of her condition being that of hemi-
plegia, a paralysis of one side of the body. Defendant con-
tends, and bases such contention upon the testimony of phy-
sicians examined by it hypothetically, that her condition of
hemiplegia was traceable to congenital defects and not to
traumatism. The contentions of the parties as to plaintiff's
condition are diametrically in opposition; they were sup-
ported both *pro* and *con* by their witnesses, and such conten-
tions were submitted for the determination of the jury.

Plaintiff's attending physician, Dr. Collins, died about
three months preceding the trial. Dr. Grady attended plain-
tiff and treated her some, since September, 1905, and he
and Drs. Skelton, Adams and Cox furnished the proof as to
plaintiff's physical and mental condition and the prognosti-
cations as to the permanency and incurableness of her con-
dition. The evidence of Drs. Grady, Skelton, Adams and
Cox does not infringe the rule stated in Chicago City Ry. v.
Shreve, *supra,* nor that of the cases there cited in support of
it. The testimony of these physicians is voluminous, and
we do not deem it necessary to an intelligent understanding
of this opinion to here set it forth. We have searched it
thoroughly and scrutinized it carefully, and have not suc-
ceeded in finding in it any statements made by plaintiff as
to any subjective symptom afflicting her which the physi-
cians or either of them repeated upon the witness stand, or
in faith of which they formed their opinions. They did,
however, testify and make demonstrations before the court
and jury as to several physical tests to which they subjected
the plaintiff, and detailed at considerable length her actions
—not her words—in response to such tests. These tests
were known to medical science and resorted to by reputable
medical practitioners in an endeavor to ascertain if a pa-
tient was suffering from the physical and mental difficulties

6

which it was claimed afflicted plaintiff. The apparent responsive actions of plaintiff, which the physicians claim indicated that she was suffering from hemiplegia, were, some of them, of a subjective character, and within the physical control of plaintiff and within her power to simulate. But we do not regard the latter fact as stamping such evidence as a communication of subjective symptoms by the plaintiff to the physician, and therefore hearsay testimony and improper. The *bona fides* of plaintiff's conduct was impugned by defendant and attempted to be sustained by their medical expert witnesses. The testimony of Dr. Cox that " the child was nervous; there was some twitching or jerking of the hands," is challenged as being symptoms of a subjective character, but we do not look upon such testimony in that light. The jerks, twitchings and nervousness were obvious and were made manifest by the tests. Subjective symptoms are those symptoms which cannot be seen; they are concealed, are known only by the party suffering from them and can only be learned from such party. The power that moves a steam engine is concealed when inactive, but the action resulting from the concealed power is made manifest when the machinery is started and the subjective force is put into the action of which it is capable and its workings and effect then become objective. So with plaintiff, in repose all the symptoms attending her disease were somewhat subjective, but responding to the tests made, and while under the influence of them the symptoms became objective. It is true that with a designing, crafty person the responses from such tests may be simulated. This was frankly admitted to be possible. Dr. Cox said in his examination, "I could not say positively whether this jerking was voluntary or involuntary. My impression was that it was involuntary. Of course they were voluntary muscles that were acting, moving the whole limbs, but in a peculiar way and various motions." The whole matter of dispute as to simulation or not was fairly before the jury, without any attempt to conceal the fact that simulation was possible. The weight and credence to be given such evidence was for the jury. They

both saw and heard the witnesses, including the plaintiff.

The question of simulation involved the veracity of the plaintiff, and the jury, upon a consideration of the whole evidence, we assume from their finding, believed that plaintiff did not simulate. The fact that the plaintiff's physicians made the examination of and applied the tests to plaintiff for the express purpose of qualifying them to testify as expert witnesses on the trial of the case, was proper for the consideration of the jury for use by them in weighing the evidence. That fact was made to appear from the testimony of the physicians themselves. The observations of the learned trial judge in his rulings upon defendant's objections also made this manifest to the jury. He said: "I am not prepared to hold that these tests are incompetent. It is perfectly clear that the value of them is to be determined by things that are already apparent, that the plaintiff is an interested party, and that she was being examined to qualify the doctor to testify, and that he was making the examinaton for that purpose; under the circumstances under which it was made, and the fact, if it should ultimately turn out to be a fact, that there was a better test to be applied than was applied, all that goes to the value, but I do not know of any rule which justifies the court in holding that the testimony is absolutely incompetent as to the tests applied by the physicians." Again, Dr. Cox said in the course of his examination, "That was the grip test, not with the dynamometer; this test was made by my taking hold of her hands and asking her to squeeze, so that the amount of pressure applied was the application of force by herself. *This examination was not made for the purpose of treating this girl, but for this lawsuit.*"

So that it clearly appears, from the foregoing recitals, that there was no concealment of the purpose of the examination and tests, but that the jury were frankly told that the purpose of such examinations and tests was to qualify the physicians to testify as expert witnesses for plaintiff on the trial of her action. Dr. Cox further testified, "There were other movements of the head and nervous movements that I

noticed about the child when she was spoken to or her attention was attracted to one thing or another, and that was when these little twitchings were observed. It was only when her attention was attracted that I noticed this twitching." These statements are condemned by defendant as self-serving declarations and demonstrations of physical conditions not admissible in evidence when made by a physician who in that way qualified himself as an expert witness.

We do not regard I. C. R. R. v. Sutton, 42 Ill., 438, as authority for such contention when applied to the facts of this case. Counsel for defendant in their citation of authority on this point have assumed, contrary to the fact, that the witnesses gave in evidence statements made by plaintiff as to subjective symptoms at the time of their examination of her. The assumption being erroneous, the authorities cited are without force.

The reason for the rule attempted to be invoked by defendant is well summarized in W. C. St. R. R. v. Carr, 170 Ill., 478, where the court say: "It was hearsay pure and simple, and we are unable to see upon what ground the ruling of the court in refusing to withdraw it from the jury can be sustained." None of the testimony here challenged is hearsay.

This case is manifestly distinguishable from C. C. Ry. Co. v. Mauger, 128 Ill. App., 512. There the opinion of the medical witness was based upon statements of the plaintiff, while in the case at bar no testimony of either Drs. Cox, Skelton, Adams or Grady was predicated upon any oral statement made by plaintiff.

3. We have diligently examined the hypothetical questions put to the physicians, and are of the opinion that they are free from any material or reversible error. The hypothetical questions asked substantially conform to our rulings in City of Chicago v. Didier, 131 Ill. App., 406, where the principles controlling such questions are fully discussed, with ample citation of supporting authority, and which on further appeal the Supreme Court confirmed, 227 Ill., 571. The hypothetical question concluded thus: "Assuming all these

matters to be true, can you, as a physician and surgeon, form an opinion as to what caused her condition?" There was nothing left to the witness for surmise, conjecture or speculation as to what might or might not cause the condition. It called for a direct, positive answer, upon which, if traceable to the injury, damages could be assessed. There was no assumption of fact in the hypothetical question which invaded the province of the jury, to find the fact, as pointed out in the Didier case, *supra,* in which case most of the authorities on this point cited by defendant, including the case of I. C. R. R. v. Smith, 208 Ill., 608, mainly relied upon to substantiate defendant's contention, are reviewed. Some of the cases cited by defendant from the reports of this court, among them I. C. R. R. v. McCallum, 122 Ill. App., 531, decided in the Third District, Chicago City Ry. v. Sugar, 117 *Ibid.,* 578, and City of Chicago v. Powers, 117 *Ibid.,* 453, decided by the Branch Appellate Court, are not in accordance with the decision of the Supreme Court in the Didier case, *supra.*

The objection made to the evidence of Mary Barth is not well taken. She was at first mistaken as to the year in which she saw plaintiff in a fit, and put it as in June of the year of the accident. Her testimony on this point is plainly reconcilable with the fact that what she witnessed occurred in June of the year following the accident. Her final answer was, "It was in June after she was hurt." While the redirect examination of the Lutheran minister Louis Loechner might with propriety have been omitted, there was nothin it of any serious moment which can be construed as harmful to the defense. We concur with the statement of the trial judge in ruling on the objection, "I would not use that form, *but there is nothing vicious in it."*

4. Whether or not the impaired physical condition of plaintiff was attributable to the accident, was for the jury to determine. They have done so after hearing the evidence of the witnesses for both sides of the contest. There was much conflict in the evidence. That plaintiff was injured as the result of the negligence of defendant in the manage-

ment of its car upon the occasion in question, cannot be seriously doubted. Both parties availed of skilled medical expert witnesses in support of their theories. This evidence was confined to conditions hypothetically assumed, finding support in direct evidence concerning actual conditions. Plaintiff's attending physician died prior to the trial, so that the progress of plaintiff's malady following upon the accident, of which he had knowledge, could not be brought forward. This was somewhat of a detriment to the cause. Defendant was without a medical witness who had knowledge of the plaintiff's condition dating from the time of the accident, and counsel for plaintiff refused the request of defendant that she submit to a medical examination by other physicians during the trial. Members of the family of plaintiff, however, gave evidence of all the facts as to her condition from the time of the accident to the trial of the case. The plaintiff herself was a witness. In this conflict of the proof the jury's decision must prevail, as we are unable to say that the verdict is contrary to the manifest weight of the evidence. On the contrary, we are of the opinion that the verdict is in harmony and accord with the evidence, which we regard as clearly preponderating in plaintiff's favor.

There is no prejudicial errors in this record justifying a reversal of the judgment of the Superior Court, and it is affirmed.

*Affirmed.*