## New York, C. & St. L. R. R. Co. v. Michael Blumenthal.

1. NEGLIGENCE—*Railroads—Ladders at the End of Cars.*—It is the duty of a railroad company, when placing ladders at the ends of cars instead of on the outside, to provide such bumpers, or agencies, as will prevent cars that are fastened to each other from coming so close together as to imperil the life or body of a person who may be lawfully employing such ladders.

**Memorandum.**—Action for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. THOMAS B. WINDES, Judge, presiding. Heard in this court at the October term, 1894, and affirmed. Opinion filed February 12, 1895

WALKER & EDDY, attorneys for appellant.

MOSES SALOMON, and BRANDT & HOFFMAN, attorneys for appellee.

MR. JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

The appellee was a drover, and for many years had been engaged as such by taking charge of cattle being transported by rail.

At the time in question, he was in charge of twenty carloads of cattle being hauled by the appellant from Chicago to New York, and while descending from the top of one of the cars, was caught between that car and the next car ahead, and partially crushed.

The train consisted of a caboose, the twenty cattle cars, and three or four box-cars carrying dead freight. The box-cars were ahead of the cattle cars, between them and the locomotive.

It was shown to be the duty of the drover to take every opportunity offered, by the stopping of the train, to inspect the cattle, and punch up all such as were discovered to be lying down. This was done by walking along the sides of the cars, on the ground or track, whenever the train came to a stand; and in cases of necessity to punch up the cattle through trap-doors in the car-roofs, when the train was in motion.

The physical ability of a drover to inspect twenty carloads at a single stop of the train would depend upon the length of the stop and the number of cattle that might require attention, and, perhaps, upon other considerations.

According to the evidence, the appellee examined about half of his car-loads nearest the caboose shortly after daylight on the morning in question, while the train was stopping at a station called Westfield; and the train starting up, he got back into the caboose, and from there, later on, climbed to the top of the cattle cars and walked forward on them to the front end of his cars, in order to be ready to descend to the ground as soon as the train should stop at the next station of Brockport, eight miles ahead, and then returning, on the ground, examine the car loads not earlier inspected.

It appears in evidence that it was the policy and interest of both the appellant company and its live-stock shippers to have the least possible delay on the route, and the decided weight of evidence is that it was the common and usual course for drovers to walk forward on the top of the cars, as the appellee did, in order, when the train stopped, to be ready at once to begin inspection of their cattle from that end of the train. By so doing and walking on the ground toward the rear of the train they would, in the progress of their inspection, approach the caboose, upon which they must again mount when the train should start, without the loss of time needed if they had to retrace their steps. Brockton was a station where cattle trains always stopped to supply the locomotive with coal, and usually stopped from ten to twenty minutes.

The appellee testified that he had stopped there, with cattle in charge, every week for years; that on this occasion he reached the front end of the forward one of his twenty cars before the train stopped; that when the train stopped he threw down his punching pole and commenced to descend to the ground by means of a ladder on the end of the forward cattle car, and had proceeded part of the way down when the locomotive suddenly backed up, without any signal of any kind being given, and his body above his legs was caught and squeezed between the cars, occasioning severe injuries.

The appellee was the only witness as to the actual occurrence, and he testified:

" The train backed just far enough to catch me; I suppose that was all, but I don't remember; it was a part of the dead freight car which caught me in the back; that car was built different from my cattle cars; it was a regular solid box car; it was the end of the car which hit me, and caught me against the platform that the brakeman stands on—on my stock car—a little platform projecting out of the stock car that the brakeman puts one foot on, to turn the brake; it is quite close to the top of the car, perhaps a foot; it projects about half a foot out, and I guess it was two feet wide; it is right at the iron brake—the brake rod goes down through the middle of it; the ladder runs up and down by the platform; it runs from the top of the car to the bottom, right back of the platform—I think right under it; I never paid much attention whether it was right by it or under it."

There was no ladder on the side of the car, and the only means of descent was by the ladder on the end, which, of course, made it necessary for a person having occasion to climb up or down to be between the cars.

The ladder was located at one side of the end of the car, and, as we understand the evidence, projected about six inches from the car, and reached sideways, according to the testimony of one of appellant's witnesses, to within six inches of the brakeman's step.

The brakeman's step, between which and the box car ap- .

pellee was, according to his own testimony, caught, projected out from the end of the car the same distance, six inches, that the ladder did, so that the space between the step and the next car would always have been equal to, neither more nor less, that between the ladder and the car ahead. The usual distance between cars, whether standing still, or in motion forward or backward, was such that a person could descend the ladder on the end of the car without danger of being caught and pressed between that car and the next one, and appellee testified that he had been up and down such ladders hundreds of times in safety. When the appellee began to descend there was plenty of room, and there was nothing that apprised him of any existing danger. The appellee did not look to see in what condition the bumpers of the cars were, and we do not think he was required to. The ladder was an invitation to him to use it when in the course of his duty he needed to, and the invitation included an assurance to him that it was safe as against any such condition as caused his injury. It was the duty of the appellant when placing its ladders on the ends of cars, instead of on the outside, to provide such bumpers, or other agencies, as would prevent cars that were fastened together from coming so close together as to imperil the life or body of one who might be lawfully employing the ladder.

And it is no answer to say that the appellee was caught between the projecting brakeman's step and the next car, and was hence in a position where he might not lawfully be.

It was physically necessary for the appellant to stoop over, or incline sidewise, to safely place himself upon a ladder that did not project above the roof of the car from which he was descending. The appellee was facing, as he testified, and as he naturally would do when descending from the front end of the car, toward the rear of the train.

Now, it is plain that he, with his feet upon the ladder, could not have been caught " just above the hips," between the brakeman's step and the car ahead, unless he were inclining his body toward the middle of the car where the step was. This we think he had a right to do. It would

have been manifestly a want of care to have started to descend a ladder, the top of which was on a level with or below the top of the car, while appellee was in an upright attitude. He should have inclined in some direction in order to have the support of his hands, and he evidently did so. It was his duty to do so, and appellant, in the construction of its ladders, was bound to know that they would be got upon in the natural and only safe way.

There was just as much space between the brakeman's step and the next car as there was between the ladder and that car, and just as much danger to appellee's body in one place as in the other.

The ladder and the brakeman's step were but six inches apart, and, having built the ladder for persons to use, if there was increased hazard in getting upon or using it because of the proximity of it to the brakeman's step, some precaution should have been taken to have guarded from such hazard.

Appellee, therefore, being where he might lawfully be, and in his lawful pursuits, we see no reason why he was not, under the circumstances of his relation to the appellant, entitled to recover.

The gravamen of the case is that appellant's cars were in such a condition that in consequence thereof the appellee was injured while doing what he had a lawful right to do, and we think the case was proved.

The case has been argued mainly on the facts, and we will only mention the assigned errors of law by saying that we do not think they are well taken.

The judgment will therefore be affirmed.