Louis K. Liggett Company, Appellee, v. Maurice Strum and Nathan Strum, copartners, trading as Strum Brothers, Appellants.

## Gen. No. 8,031.

1. SAVING QUESTIONS FOR REVIEW—*failure to assign error upon denial of new trial as precluding attack upon sufficiency of evidence.* If appellant fails to assign as error the denial of his motion for new trial, he cannot raise upon appeal the sufficiency of the evidence to support the verdict.

2. APPEAL AND ERROR—*when record does not warrant imputation of passion or prejudice in verdict.* Record on appeal from judgment for unpaid rent held to show nothing warranting the reviewing court to impute passion or prejudice in the jury's verdict, notwithstanding uncontroverted evidence therein of damage to the tenants' goods alleged as an offset against plaintiff's claim.

Appeal by defendants from the Circuit Court of Sangamon county; the Hon. E. S. SMITH, Judge, presiding. Heard in this court at the October term, 1926. Affirmed. Opinion filed February 28, 1927.

JOHNSON & PEFFERLE, for appellants.

BROWN, HAY & STEPHENS, for appellee.

MR. JUSTICE SHURTLEFF delivered the opinion of the court.

On November 8, 1920, appellants entered into a contract with appellee whereby appellee leased to appellants a certain basement room in the city of Springfield, Illinois, reserving to the lessor (appellee) "Space for all pipes, wires, shaftways, stairways' and the like leading to or from the portions of the building not hereby leased—substantially as they now are." Appellants agreed to pay therefor an annual rent of $2,400, payable in monthly instalments of $200 per month. One year later, appellee agreed to reduce the rent, the agreement being incorporated in a letter from appellee to appellants and accepted by the latter by which appellants agreed to pay $1,500 per year until January 1, 1925, $1,800 per annum from January 1, 1925, until January 1, 1928, and $2,100 per annum from January 1, 1928, to the expiration of the lease.

Since the demised room was a basement under a drug store, and therefore liable to greater hazards from water and the incidents of tenancy under such a business, the terms of the lease were more definite and specific as to these hazards than the usual provisions of a store lease. For example, the leases provided:

(a) "The Lessee has hired the demised premises after examination in their present condition (unless otherwise specifically agreed upon in writing) and without any representations on the part of the Lessor or any of its agents.

(b) ''The Lessee recognizes the liability of the premises to inflow of rain water, sub-soil percolation and sewage and assumes all risks thereof and agrees to hold the Lessor harmless on account thereof.

(c) ''It is further understood and agreed that the Lessor shall not be liable for any damages done or occasioned by or from plumbing, gas, water, steam or other pipes or sewerage, or the bursting, leaking or running of any cistern, tank, washstand, water closet or waste pipe in, above, upon, or about the said building or premises or for damages occasioned by water, snow or ice being upon or coming through the roof, skylight, trap door or otherwise.

(d) ''It is understood that Lessor is about to make certain alterations to the demised premises and that in so doing will take over a portion of the premises now or formerly occupied by the Lessee herein, and that the Lessor also reserves the right to make certain changes to the entrance to the demised premises. In event that the Lessee occupies the demised premises during the course of such alterations, the Lessee hereby agrees to assume all risk, liability and damage to persons or property in and about the demised premises during and on account of said alterations and will hold the Lessor harmless and indemnified on any account thereof.

(e) ''That Lessee will insure and keep insured said Lessor, in insurance companies satisfactory to Lessor, against liability for accident in the demised premises including approaches or side-walks appurtenant thereto and will furnish duplicate policies to Lessor covering the interests of Lessor as they may appear to the amount of $10,000.00 liability for accident resulting in injuries to or death of one person and $20,000.00 liability for an accident resulting in injuries to or death of more than one person.''

Appellants paid the agreed rent of $1,500 in monthly instalments of $125 through the years of 1922, 1923

and 1924. Beginning with January 1, 1925, the date on which the rent increased to $1,800 a year, appellants refused to pay the increased rent but continued to send appellee $125 a month, which appellee credited on appellants' account but not in full for rent due. No rent was paid for the months of January, February, March and April of 1926. No policy of liability insurance was furnished appellee as provided by the lease, and appellee carried insurance to cover these premises paying therefor the sum of $8.20.

The claim of the appellee on the trial therefore consisted of three items: (1) The arrears in rent for 1925 of $25 per month for 12 months, amounting to $300; (2) rent for January, February, March and April, 1926, at $150 per month, amounting to $600; and (3) the amount paid by appellee for liability insurance, amounting to $8.20, making a total due appellee of $908.20. None of this amount, with the exception of the item of $8.20, was disputed by appellants on the trial.

The trial court, over the objections of appellee that the evidence varied the terms of a written contract, permitted one of the appellants to testify that appellee verbally agreed, at the time of the making of the written lease, to make certain alterations which were not specified in the lease, and that these alterations consisted of the removal of all pipes in the basement. He further made general statements that water dripped from these pipes which were not removed, and caused some damage to shoes. Charles F. Kirwin and Theodore Richman, clerks employed by appellants, testified in their behalf. Kirwin said that he had seen water come in and run over the shoes (saying nothing about where it came from), and that some of these shoes had been sold at a reduction. Richman saw water leaking and sweating from the drain pipe and said that shoes were damaged thereby, but

that he did not sell any of them at a reduced price. Appellants sought to justify the admission of evidence to prove a set-off for damages, caused by water dripping from these pipes, by paragraph (d) of the lease.

Appellants made no motion for a directed verdict and motions on the part of appellee to strike all of appellants' testimony and to direct a verdict were denied. The cause was tried by a jury and there was a verdict and judgment for (plaintiff) appellee in the full amount of the rent claimed and appellants have appealed.

Appellants have not assigned as error the denial of their motion for a new trial and they cannot, therefore, urge that the verdict was against the weight of the evidence. In the absence of an assignment of error on the denial of a motion for a new trial, the sufficiency of the evidence to support the verdict cannot be raised. (*Yarber v. Chicago & A. R. Co.*, 235 Ill. 589; *Munger v. Supancicz*, 64 Ill. App. 661; *Chicago G. W. Ry. Co. v. Gitchell*, 95 Ill. App. 1; *City of Kankakee v. Phipps*, 135 Ill. App. 585; *Drake Standard Machine Works v. Brossman*, 135 Ill. App. 209.)

In *Drake Standard Machine Works v. Brossman, supra*, the Supreme Court, 232 Ill. 412, reversed the judgment for improper admission of evidence. Appellants make no complaint on the admission or rejection of evidence, or the giving or refusing in instructions in the court below. Appellants' only complaint of error in the record, to which this court should give any attention, is that appellants gave uncontradicted proof establishing damages which should have been off set against the rent, and that the verdict, therefore, is chargeable to passion and prejudice on the part of the jury. We have read the entire record and cannot say that anything in the record imputes passion or prejudice in the verdict of the jury. The court erred in the admission of testimony by appellants which contradicted the express provisions of clause

(c) of the written lease, and in the instructions given for appellants based upon such testimony. However, after reading the record, it is not difficult to determine the theory, from the evidence, upon which the jury arrived at its verdict without any passion or prejudice, and the judgment of the circuit court of Sangamon county should be and is affirmed.

*Affirmed.*