James M. McConkey, Appellee, v. Pennsylvania Railroad Company, Appellant.

Gen. No. 32,827.

Heard in the third division of this court for the first district at the June term, 1928. ▮▮▮▮ Opinion filed January 30, 1929. Rehearing denied February 14, 1929.

LOESCH, SCOFIELD, LOESCH & RICHARDS, for appellant.

ALONZO H. RANES and CORINNE L. RICE, for appellee.

MR. JUSTICE RYNER delivered the opinion of the court.

The plaintiff, in an action in tort, obtained a verdict and judgment upon the verdict in the circuit court of

Cook county, allowing him damages in the sum of $25,000. He was struck and run over by a car or cars operated by the defendant and, as a result, suffered the loss of an arm and sustained other serious injuries. The defendant brings this appeal and says that the trial court, at the close of all the evidence, should have granted its request for a directed verdict; that there was error in the giving of plaintiff's instruction numbered 1; that defendant's instruction numbered 17 should have been given, but was refused; that the court abused its discretion in permitting counsel for the plaintiff, in his closing argument to the jury, to discuss the amount of damages to be assessed, when counsel for the defendant, in his argument, had wholly refrained from touching upon the subject; that counsel for the plaintiff made intemperate and prejudicial remarks before the jury, and that the damages assessed are excessive.

The defendant made a motion for a new trial, which was in writing and specified the points relied upon. It was denied. The assignment of errors upon the record is, with one or two unimportant exceptions, a duplicate of the motion. The motion for a new trial, together with the exception to the ruling of the court, is incorporated in the bill of exceptions and set out *in haec verba* in the abstract of record, but no error is assigned on the ruling of the trial court in denying the motion.

At the outset it is insisted on behalf of the plaintiff that the record presents nothing for the consideration of this court but that the defendant, by failing to assign as error the ruling of the trial court in denying the motion for a new trial, has waived the right to challenge the sufficiency of the evidence to support the verdict and also the right to complain of the court's action in the giving or refusing of instructions. Counsel for the defendant reply by saying that they are not

barred from urging that there was error in the giving or refusing of instructions; that the trial court erred in permitting the counsel for plaintiff to indulge in improper and intemperate remarks and argument before the jury, or that the damages assessed by the jury are excessive. They further say that "the sufficiency of the evidence to support the verdict in the case at bar is neither an important nor a controlling question."

The authorities sustain the contention made on behalf of the plaintiff that the right to question the sufficiency of the evidence to sustain the verdict has been waived. The defendant, in effect, concedes this. The cases also hold that without a motion for a new trial, exceptions to the rulings of the trial court, in the giving or refusing of instructions, and in permitting the attorneys to make improper remarks before the jury, are properly preserved for review by a bill of exceptions. Under the language of these authorities the same rule should apply to the right to question the amount of the damages assessed.

In the much cited case of *Yarber v. Chicago & A. R. Co.*, 235 Ill. 589, the Supreme Court of this State discussed at length the origin and history of the motion for a new trial. It was pointed out that the right to have the action of the trial court in overruling a motion for a new trial reviewed was statutory but that the statute did not have the effect of changing the practice with reference to questions brought into the record by bills of exceptions. The court held that the right to have reviewed rulings of the court during the progress of the trial, such as admitting or excluding evidence, giving and refusing instructions, was fully preserved by a bill of exceptions without the making of a motion for a new trial. On the question of the sufficiency of the evidence to support the verdict, however, it was held indispensable to the right of review that a motion for a new trial be made and the exception to the

ruling of the court in denying the motion properly preserved in the bill of exceptions, the court saying:

"In order to bring the question of the sufficiency of the evidence to sustain the verdict before this court for review it is necessary for the losing party to make a motion for a new trial, and, upon its being overruled, to except to such ruling, and to include such motion, the order overruling the same, and his exception thereto, together with the evidence, in the bill of exceptions; but the propriety of giving or refusing instructions or the admission or rejection of evidence where the rulings of the court thereon have been excepted to and incorporated in the bill of exceptions has always been subject to review, regardless of the fact that no motion for a new trial was made. (*Illinois Central Railroad Co. v. O'Keefe,* 154 Ill. 508.)"

The denial of the motion must also be assigned as error. *Louis K. Liggett Co. v. Strum,* 243 Ill. App. 576; *Drake Standard Machine Works v. Brossman,* 135 Ill. App. 209. The judgment of the court in the latter case was reversed by the Supreme Court, but solely upon the ground that error had been committed in the admission of improper evidence.

In the case of *Pate v. Blair-Big Muddy Coal Co.,* 252 Ill. 198, the court held that a motion to direct a verdict raises only the legal question whether there is any evidence tending to support a verdict. No motion for a new trial was made, but the court reversed the judgment of the trial court on the sole ground that it erred in refusing to give the peremptory instruction to the jury to find for the defendant. The case of *Yarber v. Chicago & A. R. Co., supra,* was cited as authority for the ruling. Other cases holding that an exception to the ruling of the trial court in refusing to give a peremptory instruction to the jury at the close of all the evidence is properly preserved for review by a bill of exceptions, without making a motion for a new

trial, are: *Wolf v. Chicago Sign Printing Co.,* 233 Ill. 501; *Clark v. Chicago, R. I. & P. R. Co.,* 231 Ill. 548; *Metropolitan Discount Co. v. Pitsch,* 208 Ill. App. 407; *Knipping v. Chicago Telephone Co.,* 184 Ill. App. 48; *Stanhaus v. Paradise Coal & Coke Co.,* 169 Ill. App. 75; *Myers v. Buell,* 142 Ill. App. 467.

Defendant's written motion for a new trial specified the points relied upon. Included in the points were matters which are properly here for review upon a bill of exceptions without the making of a motion for a new trial. The question then arises whether the inclusion of such matters in the motion and the failure to assign as error the ruling of the court in denying the motion constituted a waiver of the right to ask this court to review the same matters by a bill of exceptions. The language of the opinion in *Yarber v. Chicago & A. R. Co., supra,* indicates that such is not the law. The court in that case, at least, went so far as to hold that the practice relating to the use of bills of exceptions to present matters for the consideration of a reviewing court was not changed by the statute conferring the right to have reviewed the action of the trial court in denying a motion for a new trial.

The defendant preserved its exceptions to the rulings of the trial court in the giving and refusing of certain instructions, and in permitting the attorney for the plaintiff to make improper and intemperate remarks in the presence of the jury, in the bill of exceptions. This unquestionably is the correct practice. We do not consider that these points were waived by specifying them in the motion for a new trial and then not assigning as error the denial of the motion. Certainly the defendant should not be held to have placed itself in a worse position than if it had made no motion for a new trial at all.

We shall consider the evidence only to the extent necessary to review the rulings of the trial court which

are properly here for consideration. The place of the accident was in Effingham, Illinois, at or near Henrietta Street, a public highway running north and south. The defendant maintained 10 or 11 railroad tracks crossing this street, six of them being switch tracks. At this point there were no sidewalks on either side of Henrietta Street. Vehicles and pedestrians travelled over planks laid between the tracks and parallel with them. The planks were about 18 or 20 feet in length.

On June 4, 1925, at about 9 o'clock in the evening, a switching crew of the defendant was engaged in classifying freight cars, according to destination, in its switch yard west of Henrietta Street. This operation consisted in shoving cars, by means of a switch engine, eastward to a switching point where a switchman shifted the detached cars to the different tracks. The switching point was located about 800 feet west of Henrietta Street. From this point the detached cars travelled under their own momentum and without control by anybody. The cars were not provided with lights or other means of giving warning of their approach. Two cars were "shunted" or "kicked" onto track No. 3 and when the "lead" car came to a stop its easterly end projected over the west end of the crossing planks on Henrietta Street to the extent of one or two feet.

Counsel for the plaintiff contend that, at this stage of the events which led up to the accident, the plaintiff started walking south on Henrietta Street from the watchman's shanty, which was located north of the tracks, and was in the act of passing in front of the two cars when they were struck by some more cars that had been "kicked" onto track 3, causing them to move forward and strike the plaintiff. Counsel for the defendant contend that before the plaintiff reached track 3 the two cars in question had been moved forward to the east by other cars kicked onto the track,

so that the east end of the car in front extended easterly beyond the east end of the plank crossing a distance of three or four feet and that the plaintiff at the time of the accident was not walking on the planks, but off and east of them. There is some conflict in the testimony on this point which presented a question of fact for the determination of the jury. If, in considering the question whether the plaintiff was in the exercise of ordinary care for his own safety, the jury found the facts to be as contended for by counsel for the plaintiff there is ample evidence in the record to warrant such a deduction.

It is first urged by counsel for the defendant that the trial court erred in not directing the jury to find it not guilty as to the first count of the declaration because it appeared, as a matter of law, that the plaintiff was guilty of contributory negligence. This contention is based upon the fact that it was a quiet night; that the crossing watchman testified that he heard the noise of approaching cars, but that the plaintiff and two witnesses for him testified that they looked and listened but saw nothing and heard nothing that indicated impending danger on account of the approach of cars. It is further contended that the watchman could do nothing to prevent the accident because he had the right to assume that the plaintiff heard the noise of approaching cars, and that the plaintiff would stop until the crossing was clear. Little stress is laid upon the fact that the witnesses for the plaintiff said they saw nothing. The reason for this is rather obvious. The accident happened at about 9 o'clock in the evening and there is no showing that there were sufficient lights to show the cars being ''kicked'' onto the various switch tracks. But it is said that the testimony of the plaintiff and his witnesses is highly improbable, and ''that none are so deaf as those who will not hear.'' We are not prepared to say that as a matter of law the plain-

tiff was guilty of contributory negligence simply because the watchman for the defendant contradicted the testimony of the plaintiff and that of two witnesses in his behalf. It was a question of fact for the jury. *Pittsburgh, Ft. W. & C. Ry. Co. v. Callaghan,* 157 Ill. 406. This is true even though the person injured was, at the time of the accident, engaged, in violation of an ordinance or statute, in the act of climbing through a string of cars at a railroad crossing. *Lerette v. Director General of Railroads,* 306 Ill. 348. Failure to look or listen does not constitute negligence *per se* but ordinarily presents an issue of fact for the determination of the jury. *Heidenreich v. Bremner,* 260 Ill. 439. Even if we assume that the watchman and the field switchmen, as they testified, heard cars approaching Henrietta Street from the west and that the cars were making the usual noise of moving cars, it cannot be said as a matter of law that the plaintiff was guilty of contributory negligence. The plaintiff was not in a position to know onto what tracks cars were being "kicked" or how far they would travel before stopping. Certainly he was not obliged to wait until the defendant was through with all of its switching operations before attempting to pass along a public highway. None of the witnesses for the defendant attempted to characterize the kind or extent of the noise made by the cars after they had been "kicked" or "shunted" onto the different switch tracks. It may well be, as was said in *Illinois Cent. R. Co. v. Baches,* 55 Ill. 379, that these cars were "silent" in their approach and "dangerous" in their force.

It is next insisted as a ground for the reversal of the judgment of the trial court that the defendant was entitled to a directed verdict as to the third count of the declaration because the evidence does not support the charge of wilful and wanton conduct on the part of the defendant. This point, literally taken, is wholly

without merit, as there is no assignment of error sufficient to raise any question as to the sufficiency of the evidence to support the verdict. In the discussion of the point, however, counsel say that whether there is any evidence fairly tending to show that the negligence charged was the proximate cause of the injury is a question of law properly raised by a motion for a directed verdict and that there is a clear distinction between a negligent and a wilful tort. With these propositions of law there can be no quarrel. The legal question arises when it come to their application to the facts in the instant case. In this connection two other fundamental principles of law are to be considered. One is that it is not reversible error to deny a motion to take from the jury counts of a declaration where there is no evidence tending to support them if there is one good count with evidence tending to support it, as it will be presumed that the jury based its verdict on the count supported by the evidence. *Scott v. Parlin & Orendorff Co.*, 245 Ill. 460. The other is that the question as to whether the evidence supports the charge of wilful and wanton conduct is ordinarily for the jury to determine. *Heidenreich v. Bremner,* 260 Ill. 439. In the latter case the court said:

"Whether a personal injury has been inflicted by gross or wanton negligence is a question of fact to be determined by the jury. (*Illinois Central Railroad Co. v. Leiner,* 202 Ill. 624; *Chicago, Burlington and Quincy Railroad Co. v. Murowski,* 179 id. 77.) It is not always easy to state what degree of negligence the law considers equivalent to wanton or gross negligence. The character of an act as being wanton or gross is greatly dependent upon the circumstances of each case. To constitute willful and wanton negligence it is not always necessary to prove that the defendant was actuated by ill-will toward the plaintiff. An entire absence of care for the life, person or property of

others, if such as exhibits indifference to consequences, makes a case of constructive or legal willfulness, such as charges a person whose duty it was to exercise care with the consequences of the legal injury. 1 Thompson on Negligence, sec. 22; *Neice v. Chicago and Alton Railroad Co.*, 254 Ill. 595; *Chicago Terminal Railroad Co. v. Kotoski*, 199 id. 383; *Illinois Central Railroad Co. v. Leiner, supra.*"

This rule is peculiarly applicable to the present case when we consider the fact that the Supreme Court of this State has on several occasions said that the use of a "running" or "flying" switch or the "shunting" or "kicking" of cars is very dangerous and constitutes negligence. *Chicago Junction Ry. Co. v. McGrath*, 203 Ill. 511; *Illinois Cent. R. Co. v. Hammer*, 72 Ill. 347; *Chicago & A. R. Co. v. Garvey*, 58 Ill. 83; *Illinois Cent. R. Co. v. Baches*, 55 Ill. 379. In the latter case the court said that such practice seemed to amount to a high degree of negligence.

It is further urged that there was an entire lack of evidence to support the first and third counts of the declaration. Originally the declaration consisted of three counts, but the second count was withdrawn during the trial of the case. Each one of the remaining counts in substance charged as the proximate cause of the accident the negligent operation by the defendant of one of its locomotive engines and car or cars. It is said that the proof fails because the undisputed evidence shows that there was no engine nearer than 500 feet from the scene of the accident. This point is devoid of merit. No matter where situated, the engine used in switching the cars was the force that put them in motion and permitted them to pass on in the night without human control and without light, bell or whistle, to stop only when the momentum had expended its force. Furthermore, each count expressly charged that the plaintiff was struck and injured by

one of the defendant's box cars. The second count charged that the defendant wilfully and wantonly "operated one of its locomotive engines and car or cars without blowing any whistle, or ringing any bell, at a high and dangerous rate of speed," etc. We cannot adopt the narrow construction insisted upon by counsel that the charge of failure to blow a whistle or ring a bell applied only to the engine. It applied to the entire operation, commencing with the starting of the cars in motion and then releasing them by the "kicking" or "shunting" process to be shifted onto the various switch tracks down to their respective points of destination.

It is next contended on behalf of the defendant that the court committed reversible error in giving to the jury instruction No. 1 tendered by the plaintiff. It is said that the wording of the instruction was such that the giving of it was, in effect, to read to the jury the two counts of the declaration. It has been repeatedly held that the better practice is for the court in its instructions to define the issues for the jury rather than to refer them to the pleadings to ascertain what they are. While the practice of giving instructions like the one in question is to be condemned, it does not constitute reversible error. *McFarlane v. Chicago City Ry. Co.*, 288 Ill. 476, and *Krieger v. Aurora, E. & C. R. Co.*, 242 Ill. 544. Particularly is this true where the instruction given is not peremptory in form.

Counsel for the defendant further insist that the trial court erred in refusing to give to the jury defendant's instruction No. 17. This instruction reads:

"The court instructs you that it was the duty of the plaintiff at said time and place in approaching and passing over said crossing to exercise ordinary care to avoid being injured. If you believe that ordinary care required the plaintiff to look and listen before entering upon the railroad tracks crossing said intersec-

tion and while crossing over the same, and if you further believe that he did not so look and listen and that if he had so looked and listened he could have avoided the injury to himself at said time and place and that in consequence of the fact that he did not so look and listen he was injured, then he cannot recover in this case and you should find the defendant not guilty.''

Among the instructions given at the request of the defendant were numbers 11 and 15, which read, respectively, as follows:

''11. The court instructs you that a railroad highway crossing is a dangerous place and it is the duty of a person approaching such crossing to exercise ordinary care and caution to avoid collision with cars standing upon or approaching such crossing and to use ordinary care and caution before going upon such crossing to ascertain whether cars, trains or engines are upon such crossing or approaching in near proximity to the same.''

''15. The court instructs you that it was the duty of the plaintiff at said time and place in approaching and passing over said crossing to exercise ordinary care to avoid being injured. If you believe that ordinary care required the plaintiff to look and listen before entering upon the railroad tracks crossing said intersection and while crossing over the same, and if you further believe that he did not so look and listen and that if he had so looked and listened he could have avoided the injury to himself at said time and place and that in consequence of the fact that he did not so look and listen he was injured, then he cannot recover in this case and you should find the defendant not guilty, unless you further believe from the evidence that the injury was willfully and wantonly inflicted upon the plaintiff.''

It will be noted that instruction No. 11 states generally the duty of persons about to pass over a rail-

road crossing and that instructions numbered 15 and 17 are identical, except that number 15 concludes with the words, ''unless you further believe from the evidence that the injury was willfully and wantonly inflicted upon the plaintiff,'' which are not contained in number 17. In one instruction the court was asked to tell the jury that if they believed that the plaintiff failed to use ordinary care for his own safety then they should find the defendant not guilty, unless they further believed that the defendant was guilty of wilful and wanton conduct. In the other instruction the court was requested to advise the jury to ignore the issue presented by the third count of the declaration and to find the defendant not guilty if they believed the plaintiff was guilty of contributory negligence. We have held, in this opinion, that there was sufficient evidence fairly tending to support the charge of wilful and wanton conduct on the part of the defendant to warrant submission of this issue to the jury. That being true, the court did not err in refusing to give to the jury the instruction in question.

It is further argued that the judgment of the trial court should be reversed and a new trial granted because of prejudicial and improper arguments made before the jury by counsel for the plaintiff. In their brief counsel for the defendant quote at length, from the record, the arguments objected to. Five or six pages are devoted to this purpose. Less than a page of the argument, however, is set out in the abstract of record. Notwithstanding this failure to comply with the rules of this court, we have examined all of the argument quoted in the brief. A number of remarks made by counsel for the plaintiff should not have been made. We are not, however, inclined to think that they were of such a prejudicial character as to warrant a reversal of the judgment. The reviewing courts of this State have frequently censured attorneys for the making of

intemperate and improper arguments to the jury, but have seldom reversed judgments for that reason alone.

It is finally said that the damages assessed by the jury are excessive. The amount allowed was $25,000. At the time of the accident the plaintiff was 43 years of age. As a result of the injury it was necessary to amputate his right arm at the shoulder. He testified that before the accident he weighed from 160 to 165 pounds and was in good health; that at the time of the trial he weighed 119 pounds; that he had practically lost control of his legs; that he constantly suffered severe pains in his back and hips and that he had difficulty in sleeping. Most of the arguments made here on this point were proper to be made to the jury. Much stress is laid upon the fact that the plaintiff only earned approximately $728 per year and that $25,000 will produce an annual income of $1,500, and leave the principal intact at his death. As a matter of mathematics this is correct. But compensation for damages due to decreased earning power is not the only element to be considered by the jury in determining the amount of damages to be awarded. They were properly instructed as to all of the elements to be considered by them and, while we think the amount of damages assessed is large, we do not feel, in view of the character and extent of the injuries sustained by the plaintiff, that we would be justified in holding it to be excessive.

For the foregoing reasons the judgment of the circuit court of Cook county is affirmed.

*Affirmed.*

HOLDOM, P. J., and WILSON, J., concur.