## Corning & Company, Appellant, v. Peoria & Pekin Union Railway Company, Appellee.

### Gen. No. 4,996.

1. INSTRUCTIONS—*when giving of peremptory saved for review.* The question whether the court erred in instructing the jury to find the issues for the defendant is saved by an exception to the giving of such instruction in the bill of exceptions without the interposition of a motion for a new trial.

2. COMMON CARRIERS—*obligation of, safely to transport.* When goods have been delivered to a carrier to be carried and delivered to a certain person at a certain destination, the carrier is an insurer for the safe delivery of the goods to the person to whom they are consigned.

3. COMMON CARRIERS—*when liability does not attach.* The liability of a common carrier attaches by virtue either of full delivery of the merchandise to be transported or by acceptance of such merchandise by the carrier.

4. COMMON CARRIERS—*when delivery of merchandise not shown.*

408 APPELLATE COURTS OF ILLINOIS.

Corning & Co. v. Peoria & Pekin Union Ry. Co., 144 App. 407.

*Held*, under the facts of this case, that there was neither delivery of merchandise to the carrier nor acceptance thereof by the carrier and that the common law liability of the carrier did not attach.

Assumpsit. Appeal from the Circuit Court of Peoria county; the Hon. NICHOLAS E. WORTHINGTON, Judge, presiding. Heard in this court at the April term, 1908. Affirmed. Opinion filed October 14, 1908.

**Statement by the Court.** On June 4, 1904, the Peoria & Pekin Union Railway Company placed Illinois Central box car No. 16223 on a spur track next to a platform on the outside of a warehouse operated by the Corning Distilling Company of the city of Peoria. The Corning Distilling Company loaded the car that afternoon with sixty-six barrels of alcohol, whiskey and cologne spirits, the property of Corning & Company, a corporation engaged in rectifying spirits, whose place of business was some 1200 feet away. The loading was finished about 2:30 P. M. and the car was sealed by the Distilling Company. At about four o'clock that afternoon and before the car had been removed, an explosion took place in another warehouse of the Distilling Company, next to that from which this car had been loaded, and a wall of said last mentioned warehouse fell across said spur track so that an engine could not go in to haul out said car. A fire immediately broke out in the warehouse, and this car and its contents were consumed.

This is an action by Corning & Company for the use of the Liverpool & London & Globe Insurance Company of London, England, and for the use of the Norwich Union Fire Insurance Company, of Norwich, England, against the Peoria & Pekin Union Railway Company, to recover the value of the contents of said car. A declaration was filed containing two special and two common counts. Plaintiff afterwards dismissed the two common counts. The first special count averred that plaintiff delivered said goods to defendant, a common carrier, and the defendant received the same to be taken care of and safely car-

SECOND DISTRICT—OCTOBER, 1908.     409

Corning & Co. v. Peoria & Pekin Union Ry. Co., 144 App. 407.

ried from said spur track to plaintiff's warehouse
adjacent to one of the defendant's tracks in the city
of Peoria to be there safely delivered by defendant
to plaintiff; that in consideration of a certain reward
to defendant it promised plaintiff to take care of said
goods and safely carry them to said place and there
deliver them to plaintiff; and that, though defendant
as such carrier received said goods for said purpose,
yet it did not take care of or safely carry them or de-
liver them to plaintiff, but behaved so carelessly in
that respect that by defendant's mere negligence and
improper conduct said goods were wholly lost to
plaintiff. The second count was shorter but similar in
its charges, save that it alleges a promise by defendant
to deliver the goods to plaintiff within a reasonable
time and that a reasonable time had elapsed but de-
fendant did not safely carry said goods to the ware-
house of Corning & Company, nor there deliver the
same to plaintiff, whereby the goods were lost to
plaintiff. Defendant pleaded the general issue. At
the close of all the proofs, the court, on motion of de-
fendant, directed the jury to find the issues for de-
fendant. Such a verdict was returned and defendant
had judgment thereon. This is an appeal from said
judgment.

F. H. TICHENOR and BARGER & HICKS, for appellant.

STEVENS & HORTON, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the
court.

Plaintiff did not move for a new trial. Those ques-
tions which require to be first presented to the court be-
low by motion for a new trial before they can be availed
of on appeal are not preserved for review by this record.
The question whether the court erred in instructing
the jury to find the issues for the defendant is saved
by an exception to the giving of such instruction in

410    APPELLATE COURTS OF ILLINOIS.

Corning & Co. v. Peoria & Pekin Union Ry. Co., 144 App. 407.

the bill of exceptions, without the interposition of a motion for a new trial. I. C. R. R. Co. v. O'Keefe, 154 Ill. 508.

When goods have been delivered to a carrier to be carried and delivered to a certain person at a certain destination, the carrier is an insurer for the safe delivery of the goods to the person to whom they are consigned. Pacific Express Co. v. Shearer, 160 Ill. 215. The liability of the carrier is fixed by accepting the property to be transported. If the goods are placed in his car without his knowledge or acceptance or that of his agent, he is not liable as a common carrier. If the owner or person having the custody of the goods to be shipped never parts with their possession or does not place them under the control of the carrier there is no bailment, and no liability as common carrier is incurred. I. C. R. R. Co. v. Smyser & Co., 38 Ill. 355; Pratt v. Grand Trunk Ry. Co., 95 U. S. 43. Where a car had been furnished by a common carrier and loaded with hay, but the shipper requested that it be not forwarded until he had seen the consignee, and while so delayed the hay was destroyed by fire, it was held that the railway company was not liable as a common carrier, because the liability of a common carrier does not attach until the delivery to him of the property is complete. St. L., A. & T. H. R. R. Co. v. Montgomery, 39 Ill. 338. The material question here is whether the goods in question had been delivered to defendant and accepted by it for transportation before the fire.

There is very little controversy about the material facts. The car in question had been ordered the night before, and had been set in by defendant on said spur track on the day of the fire and before 12:30 P. M. But the car had not been ordered of defendant. The car had been ordered by the Distilling Company from the Illinois Central Railroad Company, and then the Distilling Company had requested defendant to get said car from the Illinois Central and place it on said

SECOND DISTRICT—OCTOBER, 1908.    411

Corning & Co. v. Peoria & Pekin Union Ry. Co., 144 App. 407.

spur track.  The defendant furnished to its shippers blanks known as "form 200" for use by them whenever they had cars to be shipped out.  Said blanks were in three parts, the first, to be filled out and signed by the shipper, giving directions where the car should be delivered and what its contents were; the second part containing an order to the switching crew to be signed by the agent of the company; and the third part a receipt for the car, to be signed by the consignee.  On or before 12:30 P. M. of that day, a clerk of the Distilling Company filled out the first part of one of these blanks and signed it in the name of the Distilling Company, thereby directing defendant to deliver Illinois Central car No. 16223, contents whiskey, from Corning Distilling Company to Corning & Company, and charge switching to Corning & Company.  This clerk departed from the warehouse at about 12:30 leaving this switching order for delivery to defendant's messenger boy whenever he should come.  At that time the Distilling Company had not commenced to load the car.  That work began after one o'clock P. M.  Between two o'clock and two thirty P. M. Moran, defendant's messenger boy, came to the warehouse of the Distilling Company and asked if they had any switching orders, and a clerk delivered this order to him, and he detached the order and tacked the rest of the form upon the side of the car furthest from the platform.  No one testifies that the loading of the car was then completed.  The clerk who delivered the order to him testified that he did not know whether the car was then loaded or not, and that that had nothing to do with the delivery of the order.  When all of Moran's testimony is read from the record it will be found that he testified that the loading of the car was not yet finished; that the men were at work upon the platform; and that when he tacked the card on the other side of the car the door on that side was closed, but he heard the men at work in the car.  The officers and agents of plaintiff, as well as the of-

ficers and agents of defendant, testified that this order would have been delivered to Moran at any time after it was made out if he had called, and that the delivery of the order to Moran did not mean that the car was loaded and ready to be taken away. It was the custom of defendant to do the afternoon switching in that vicinity between four and six o'clock P. M. This was partly for the convenience of defendant and partly for the convenience of the Distilling Company and other shippers, as their cars were usually not loaded and ready to go out earlier than those hours. The loading of this car was finished about two thirty P. M. and the Distilling Company then sealed the car. The explosion and fire was about four o'clock P. M. The switching order had to go to what was called the junction office of defendant, where, if the order for shipment was accepted, it was put on the list for the shipping crew that afternoon. In this particular case another thing remained to be done before defendant would determine to move the car as requested by the shipping order. Where it received a car from another railroad to be placed at a warehouse for loading, if it received an order to ship such loaded car back to the same railroad, it would obey that order without any further directions. But if it had orders to ship that car to some other railroad or place than the railroad from which the car came, then the junction office, upon receiving the switching order, would apply to the railroad company which had furnished the car to ascertain if it consented that its car should be sent to this different destination. In this case, in the regular course of business, when the switching order reached the junction office, the chief clerk there or his assistant would call up the Illinois Central office by telephone and ask if it consented that this car of liquor be delivered to Corning & Company at its warehouse and, if the Illinois Central made a negative answer, then defendant would not accept nor execute the switching order. If the Illinois Central consented,

SECOND DISTRICT—OCTOBER, 1908.    413

Corning & Co. v. Peoria & Pekin Union Ry. Co., 144 App. 407.

then defendant would accept the order and enter it on its books and place it on the list of work to be done by the switching crew that afternoon. The propriety of such a custom and usage is obvious. Otherwise the Distilling Company might have used this car for a different purpose from that for which it was obtained from the Illinois Central, without the knowledge or consent of the Illinois Central, and without paying for its use. When Moran received this switching order he did not immediately return to the junction office, but called upon other shippers to see if they had orders to take out cars that afternoon. He had not reached the junction office with this order when the explosion and fire occurred. The junction office had therefore no notice that the Distilling Company wished them to ship out that car that afternoon, and had no notice that the car was not to be returned to the Illinois Central, and defendant had not applied to the Illinois Central to know whether it consented to such a movement of its car, and that consent had not been obtained, and the things had not yet been done which were essential before defendant could accept the order to move the car.

It is contended that this evidence relative to the custom of obtaining the consent of the Illinois Central before turning the car over to some other destination was incompetent, because it was not shown that the shipper knew of the custom. Plaintiff had alleged that it had caused these goods to be delivered to defendant and that defendant had accepted them for transportation. The issue was whether the goods had been delivered to and accepted by the defendant for transportation, and plaintiff had to prove that. If some fact existed, because of which defendant was not at liberty to take the car away until another order had been obtained from the Illinois Central, then defendant had not yet received the goods for transportation, and the knowledge of that fact by the shipper was not essential.

414 · APPELLATE COURTS OF ILLINOIS.

Corning & Co. v. Peoria & Pekin Union Ry. Co., 144 App. 407.

Under all the facts above stated we conclude that the liability of defendant as a common carrier had not attached. The making out of the switching order was before the goods were loaded. The delivery of the switching order to the messenger boy was before the loading was completed, and the car could not have been removed at that instant. The messenger had no authority to accept goods for shipment. After the loading was completed the shipper gave no notice to defendant that the car was ready. It was the intention of both parties that the shipping order only meant that the car would be loaded during the afternoon and would be ready to be taken out between four and six o'clock P. M. It may be that, if this had been a car owned by defendant, or which it had procured and placed on that spur track for loading, defendant's liability as a common carrier would have attached when the loading was completed and the car sealed, without any other notice to defendant that the car was ready. But certainly that cannot be true where defendant did not procure the car, but the shipper did, and where the usage of the business would not permit defendant to take the car to any other destination than that from which it had received it without another order from the railroad company which owned the car, which order it had not received. Until this switching order had reached the junction office and it had obtained the consent of the Illinois Central that this carload might be taken to plaintiff's warehouse, defendant had not accepted the goods for shipment. If the Illinois Central had refused its consent, defendant would have refused to accept the shipping order and would not have been liable as common carrier.

Defendant also supports the judgment on other grounds, but we are of opinion that the court did not err in giving the direction to the jury, for the reasons above stated, and it is therefore unnecessary to discuss other reasons urged in support of the judgment. We hold that the evidence recited was competent. If

any other evidence offered by defendant was improperly admitted, plaintiff was not harmed thereby, as the jury did not decide the questions of fact. For the reasons stated the judgment is affirmed.

*Affirmed.*