# Rebecca Stanhaus, Appellee, v. Paradise Coal & Coke Company, Appellant.

1. APPEALS AND ERRORS—*when ruling upon motion to direct verdict saved for review.* A motion for a new trial need not be interposed in order to save for review the ruling of the court in denying a motion for a peremptory instruction. If an exception is preserved to the denial of such a motion the propriety of the court's action is saved for review.

2. MINES AND MINERS—*when evidence tends to establish wilful violation.* If the evidence tends to establish that the mine examiner did not sound the place of most imminent danger and wholly failed to comply with the requirements of the statute that such places should be marked as dangerous, it is proper for the court to deny a motion for peremptory instruction to find for the defendant.

3. MINES AND MINERS—*who may avail of provisions of act.* Miners engaged in enlarging the space to be used for a parting by making it both wider and higher are entitled to the protection of the act where it appears that they were paid for their work according to the amount of coal mined just as other miners.

Action in case for death caused by alleged wrongful act. Appeal from the City Court of DuQuoin; the HON. B. W. POPE, Judge, presiding. Heard in this court at the October term, 1911. Affirmed. Opinion filed March 21, 1912.

DENISON & SPILLER and M. U. HAYDEN, for appellant.

M. C. COOK and E. H. CARR, for appellee.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

This is an appeal from a judgment in favor of appellee, who brought suit to recover damages resulting to her through the death of her husband, Walter Stanhaus, Sr., alleged to have been caused by the wilful failure of appellant to comply with the provisions of section 18, chapter 93 of the Revised Statutes in reference to Mines and Miners.

It is alleged in the declaration that on July 12, 1909, appellant was possessed of a coal mine in Perry county, Illinois, and was mining and removing coal from the main west entry; that on said date there was a lot of loose and cracked coal, slate, rock and other material overhanging the roof of the same, at or near the face, constituting an unsafe and dangerous condition.

The first count charged that appellant wilfully failed to place a conspicuous mark at said place as a notice to all men to keep out; that by means thereof Walter Stanhaus, Sr., entered said entry without being under the direction of the mine manager and while engaged at or near the face thereof, a lot of said loose and cracked coal, slate, rock and other material fell upon him and so injured him that he died. The second count charged that appellant wilfully allowed said Stanhaus to enter said entry for work before said dangerous condition was made safe. There was also a third count charging a wilful failure on the part of appellant to supply props when demanded, but as to this count, the court, at the close of the evidence, instructed the jury to find the defendant not guilty.

There was a judgment in favor of appellee for $1,-477.

Appellant presented no motion for a new trial in the court below and does not ask here that the court consider any questions, which if showing error, could result only in remanding the case for another trial. The

only complaint of appellant here is as to the refusal of the trial court to direct a verdict for appellant as to the first and second counts of the declaration upon its motion made at the close of appellee's evidence and again at the close of all the evidence. Exceptions were saved to the ruling of the court upon motions to direct a verdict and the question whether the court erred in denying them is therefore preserved without the interposition of a motion for a new trial. I. C. R. R. Co. v. O'Keefe, 154 Ill. 508; Corning & Co. v. P. & P. U. Ry. Co., 144 Ill. App. 407.

The deceased and his two sons, Amos Stanhaus and Walter Stanhaus, Jr., were, as it appeared from the proofs, experienced coal miners, employed in mining coal for appellant and worked together as "buddies." Early in the summer of 1909 they were engaged in constructing a part of the main west entry of the mine. This work consisted in the enlargement of the entry for a distance of about 200 feet to a width of about 18 feet, so that double tracks could be laid therein, one to receive loaded cars from the drivers to be hauled from thence to the bottom of the shaft by an electric motor, and the other to receive the empty cars returned by the motor to be again taken and refilled. The entry was in use by the track already there, so it was necessary to do the new work on the parting at such time as the mine was not being operated at that point. As a consequence deceased and his sons worked in other portions of the mine at mining coal when the track was being used at the proposed parting and when it was not, they worked at the construction of the parting. At that point there was a depression or dip in the floor of the entry, and the roof above was correspondingly low. To put the parting in proper condition for the storage of cars, it was necessary to raise the floor so as to make it substantially level by filling in the bottom of the entry, and this work in turn made it

necessary to remove material from the roof so as to increase its height in proportion to the amount of the fill below. The vein of coal in this entry was some 9 or 10 feet thick and in mining it out only 7 to 7½ feet of the coal were removed, leaving a thin vein of top coal between two or three feet thick for a roof. As the track was raised in the entry this top coal was mined out by deceased and his sons. They were chosen for the work because they were known to be experienced workmen and were paid by the ton, for mining the roof down, the same compensation as for mining coal in the rooms. The mine manager went with them and explained the work to be done, marking with chalk on the top the place where they were to begin and where they were to stop mining the coal from the roof. He told them to use their own judgment in doing the work and during the two or three months that had elapsed since they commenced, they worked such days as the mine was idle, sometimes only a day or two in the week. The mine manager was back in the parting several times, while the work was going on but gave them no further instructions. On Friday preceding the injury, which occurred on Monday, the mine being idle they worked on the roof and lacked only about one-half day's work in finishing it. On that day they had shot down the top coal on the left hand side of the entry and these shots left a triangular piece of top coal hanging loose over the gob on that side of the parting. On Saturday deceased and his sons worked at mining in another part of the mine, but on Monday following the mine being again idle they went to the parting to proceed with their work. They fired two shots which knocked down all the top coal that was to be taken out on the right side of the entry and left the triangular piece, on the left side of the track, which had been hanging loose since Friday. They examined the piece and concluded they would have to shoot it down.

Thereupon Walter Stanhaus, Jr., began drilling a hole in the top coal for the purpose of firing a shot, while Amos Stanhaus and his father brought in a car and commenced throwing into it the coal which had just been shot down. While this work was going on, the loose coal hanging over the gob fell and pulled with it a chunk of solid coal some four feet square over the roadway, where Walter Stanhaus, Sr., was at work loading the car, which struck and killed him.

Appellant had a licensed examiner, who went down into the mine early in the morning of the day the injury occurred and examined, among other places, the parting in question and sounded the coal with an iron rod he carried in the roof over the place where Stanhaus was killed, but did not examine the coal over the gob and did not make any danger mark nor mark the day and date of his visit on the walls of the parting.

Appellant insists, first, that the evidence did not tend to prove the wilful violation of the statute by the defendant; second, that the provisions of the mining statute relied on, are not applicable to the conditions under which the deceased was working; and third, that the alleged violations of the statute, if proven, were not the proximate cause of the death.

The only question for us to determine as the case is presented to us is, whether the court erred in refusing to peremptorily instruct the jury to find appellant not guilty.

Section 18 of the Mining Law provides that when working places are discovered in which any dangerous conditions exist, the examiner shall place a conspicuous mark thereat as a notice to all men to keep out and at once report his finding to the mine manager. That a dangerous condition existed in the parting at the place in question, was shown by the evidence. It also appeared that the examiner did not sound the place of most imminent danger and that he wholly failed to

comply with the requirements of the statute that such places should be marked as dangerous. Under these proofs we think it was a proper question for the jury to determine whether the neglect of appellant in this regard was wilful or not. It is claimed by appellant that the provisions of the statute were not applicable to the conditions under which deceased was working because the character of the work produced continuous changes; that it was part of his duty to destroy or tear down the roof and also to remove a dangerous condition or make a dangerous place safe. We do not accede to appellant's views in this regard. While deceased and his sons were engaged in enlarging the space to be used for a parting by making it both wider and higher, yet they were, after all, simply engaged as miners, in mining and loading coal. They were paid for their work according to the amount of coal mined by them, just as other miners. It is true they made changes in the conditions surrounding them, as they proceeded with their work, but they would also do so had they been engaged in opening out an ordinary room in the mine. They do not appear to have been engaged in making a dangerous place safe or removing a dangerous condition, as the evidence does not show there was any dangerous condition existing in the entry at the place in question at the time they were set to work there. Nor does the evidence show that the work in which they were engaged was of a more dangerous character than the work of mining coal in other portions of the mine. These matters were, at least, all clearly questions to be determined by the jury.

The complaints of appellant come more nearly applying to the proofs under the second count of the declaration, which alleges that deceased was wilfully allowed by appellant to enter said entry for work, without being under the direction of the mine manager, before the dangerous condition therein was made safe.

The statute, however, specifically requires that no one shall be allowed to enter the mine to work therein, except under the direction of the mine manager, until all conditions shall have been made safe. There was proof to the effect that a dangerous condition existed in this entry and no attempt was made to make it safe before deceased went to his work therein.

We are of opinion, that the proofs adduced under the second count of the declaration, were proper for the consideration of the jury, under instructions by the court as to the law.

The question as to whether the failure of appellant to comply with the terms of the statute was or was not the proximate cause of the death of Stanhaus, appears to us under the proofs in this case, plainly one for the jury.

We are therefore of opinion, that the court below did not err in refusing to give appellant's peremptory instructions of not guilty under the first and second counts.

The judgment will be affirmed.

*Affirmed.*